Jerry L. PRUITT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3678.

Court of Appeals of Alaska.

April 10, 1992.

Carol A. Brenckle, Kenai, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Jerry L. Pruitt was convicted, following a jury trial in the Kenai superior court, of the crime of third-degree misconduct involving a controlled substance (sale of cocaine), AS 11.71.030(a)(1). Pruitt appeals his conviction. He asserts that a portion of the evidence used against him at trial was obtained in violation of his constitutional guarantee of privacy defined in *State v. Glass*, 583 P.2d 872 (Alaska 1978). Pruitt also asserts that he was prejudiced when the prosecuting attorney cross-examined him about his prior arrests for crimes involving dishonesty. We affirm the trial court's ruling on the *Glass* issue, but we reverse Pruitt's conviction because of the prosecutor's improper cross-examination.

In the summer of 1989, Hortencia Rangel was working as an undercover police agent for the Kenai police department, buying drugs from suspected drug dealers. Kenai Police Officer David Hoffman obtained a *Glass* warrant to record conversations between Rangel and a suspect named Andrew Reeve.

About 10:30 p.m. on July 22, 1989, Rangel went to Reeve's trailer to buy cocaine. However, Reeve did not have any cocaine.

Rangel gave Reeve $100 to purchase one gram of the drug, and then the two of them left in Rangel's car in search of a supplier. After two unsuccessful attempts to find cocaine, Reeve left Rangel's car. When Rangel went back to look for Reeve, she found him in another car with Jerry L. Pruitt. The men told Rangel to return to Reeve's trailer and wait there for them.

Back at the trailer, Rangel waited until Reeve and Pruitt arrived. Pruitt told Rangel that he had been able to locate only one gram of cocaine, and that he wanted half of it for himself. Rangel received a slip of cocaine weighing 0.4 grams, and (because she had previously given Reeve $100 for one gram of cocaine) she also received $50 in change. This conversation was recorded by Officer Hoffman pursuant to the *Glass* warrant.

After Pruitt was indicted for the sale of cocaine, he moved to suppress the recording of his statements during this conversation. He argued that, because the *Glass* warrant did not specifically name him, the police were not authorized to record his words. The superior court denied Pruitt's motion.

 On appeal, Pruitt renews his argument that his recorded statements should have been suppressed because the *Glass* warrant had only authorized the Kenai police to record conversations between Rangel and Reeve. However, in Pruitt's case, exigent circumstances justified the police in recording Pruitt even though the existing *Glass* warrant did not specifically name Pruitt. The Kenai police had a valid *Glass* warrant to record Reeve. As explained above, Pruitt unexpectedly entered the transaction.

 Exigent circumstances justifying a warrantless search or seizure are established when the police have probable cause to conduct the search or seizure and there is "a compelling need for official action and no time to secure a warrant." *Ingram v. State*, 703 P.2d 415, 422 (Alaska App.1985), *aff'd* 719 P.2d 265 (Alaska 1986), quoting *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498 (1978).

Although the Kenai police had shown Pruitt's picture to Rangel, identifying him as a suspected drug seller, there is no indication that the police anticipated that Pruitt would become involved in Rangel's purchase of cocaine from Reeve. The first indication that Pruitt might be involved in the transaction came when Rangel returned to where she had dropped Reeve off and found Reeve sitting in a car with Pruitt. At that time, Reeve told Rangel to go back to his trailer and wait there.

The fact that Pruitt was already suspected of selling drugs and that he was now in a car with Reeve, apparently discussing a proposed sale of cocaine, provided probable cause to issue a *Glass* warrant for Pruitt. Because Reeve had told Rangel to go back to his trailer and wait for the delivery of the cocaine, it was likely that there was not sufficient time to obtain a separate *Glass* warrant naming Pruitt. Had Rangel left the trailer and taken the time to obtain a warrant for Pruitt, Reeve and Pruitt might have become suspicious and abandoned the transaction. Under these circumstances, the police were justified in taping Pruitt's participation in the conversation with Rangel and Reeve.

Support for this conclusion is found in this court's decision in *Fox v. State*, 825 P.2d 938 (Alaska App.1992). In *Fox*, a *Glass* warrant was issued for John Fox. An undercover agent went to John's house, but he was not home. Instead, Alex Fox, John's brother, answered the door. Alex asked the undercover agent what he wanted; the agent responded that he had arranged to buy cocaine from John. Alex stated that he would "take care" of him, and proceeded to sell cocaine to the agent.

The trial court in *Fox* found that, because of John's unexpected absence and the unexpected intervention of Alex, the exigent circumstances exception applied to the warrantless taping of Alex Fox's statements. This court affirmed. *Fox*, at 439.

Similarly, in this case, Pruitt's involvement in the cocaine purchase was unforeseen, and Rangel, purportedly an anxious cocaine buyer, could not leave unexpectedly without risking suspicion and potentially jeopardizing the investigation.

Therefore, exigent circumstances existed for taping Pruitt. The superior court correctly denied Pruitt's motion to suppress his recorded statements.[1]

■ This brings us to Pruitt's second argument on appeal. Pruitt testified on his own behalf at trial. On direct examination, Pruitt testified that his driver's license was revoked because he received three speeding tickets in one year. He also testified that he had been convicted of growing marijuana and had spent four months in jail for this crime. During cross-examination, the prosecuting attorney (who was not the attorney representing the State of Alaska on appeal) asked Pruitt the following questions:

PROSECUTOR: Now, Mr. Pruitt, in addition to the other offenses that you've discussed, you've also been charged with a number of crimes involving dishonesty, isn't that correct?

PRUITT: (Indiscernible)

PROSECUTOR: Now, Mr. Pruitt, isn't it true that you were charged with making a false police report?

PRUITT: Yes, ma'am, [but] that was dismissed.

PROSECUTOR: But you were charged with that, correct?

THE COURT: Approach the bench, counsel.

---

1. Judge Hanson's order denying Pruitt's suppression motion declares that the motion was denied because the taping fell within the "plain view" doctrine. Neither the Alaska Supreme Court nor this court has decided whether the plain view doctrine can be extended to *Glass* warrants. However, Judge Hanson's decision was correct under the "exigent circumstances" doctrine and therefore is to be affirmed. *Fireman's Fund American Insurance Companies v. Gomes*, 544 P.2d 1013, 1015 n. 6 (Alaska 1976).

[An appellate] court is not bound by the reasoning articulated by the trial court and can affirm ... on alternative grounds. *Moore v. State*, 553 P.2d 8, 21 (Alaska 1976). Moreover, [an appellate] court should consider any matter appearing in the record, even if not passed upon by the lower court, in defense of the judgment. *State v. Pete*, 420 P.2d 338, 341 (Alaska 1966); *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961). *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

Following a whispered conversation at the bench, the prosecutor announced that she had no further questions for Pruitt. The jury was excused, and Pruitt's attorney requested a mistrial. Judge Hanson took the motion under advisement over the weekend, then ruled that a curative instruction would remedy the situation. While a trial judge's decision to grant or deny a mistrial is reviewable only for abuse of discretion, *Roth v. State*, 626 P.2d 583, 585 (Alaska App.1981), we conclude that a mistrial should have been granted under the circumstances of this case.

The prosecutor's cross-examination of Pruitt clearly and inexcusably violated Alaska Rule of Evidence 609. Under Rule 609, a party may impeach a witness with criminal *convictions* involving dishonesty. Section (c) of the rule declares that a party wishing to impeach a witness in this fashion must first alert the trial judge to the planned impeachment and obtain the court's permission; the court is to permit the impeachment only after weighing its probative force against its potential for unfair prejudice. Here, the prosecuting attorney, without seeking the court's permission, cross-examined Pruitt about a criminal charge that had been dismissed. Moreover, the prosecutor's question clearly implied that Pruitt had been charged with "a number of [other] crimes involving dishonesty".

In *McBeth v. State*, 652 P.2d 120 (Alaska App.1982), this court reversed a criminal conviction under analogous circumstances. In *McBeth*, the prosecutor attempted to impeach the defendant's alibi witness, Lafferty, by asking him if it was true that he and the defendant had assaulted a man nine days before. Lafferty replied that he had not done this. The defense made no immediate objection to the prosecutor's question, but, after the jury was excused, McBeth's attorney moved for a mistrial. *Id.* at 125.

Reversing McBeth's conviction, this court stated:

An accusation of the sort which was made here, from a person who holds the office of District Attorney, could have a significant impact on the jury. If the accusation were believed, it might very well have damaged the credibility of McBeth and Lafferty and [could] have undercut McBeth's alibi defense in an unfair and prejudicial manner. Reversal of McBeth's conviction is therefore required.

*Id.* at 126.

Pruitt's situation is similar. Pruitt's defense was that he was not the "Jerry" whose voice was heard on the tape. This defense, although arguably weak[2], was nevertheless colorable, and it depended on Pruitt's personal credibility. The prosecutor's obvious purpose in cross-examining Pruitt about the dismissed charge of filing a false police report was to undermine Pruitt's credibility. Additionally, as Pruitt points out, the prejudice to his case was exacerbated by the fact that these improper questions were the last things the jury heard before taking the weekend recess. It was obvious on Friday afternoon, before the jury was excused for the weekend, that a curative instruction was the minimum action needed to remedy the prejudicial effect of the improper cross-examination. Such an instruction should have been given at that time. The lengthy delay between the improper questions and the court's curative instruction may well have caused the jurors to dwell on the matter too long for a short instruction to cure the problem.

■ Ordinarily, when the court withdraws improper evidence from the jury's consideration and cautions the jury to disregard it, the cautionary instruction is "presumed to cure any error which may have been committed". *Roth v. State*, 626 P.2d at 585, quoting *Anderson v. State*, 438 P.2d 228, 232–33 n. 15 (Alaska 1968). However, under the circumstances of this case, we conclude that the fairness of Pruitt's trial was substantially prejudiced by the improper cross-examination and we

---

**2.** Pruitt was identified by Rangel, who had previously seen a picture of him. Additionally,

Officer Hoffman recognized Pruitt's voice.

also conclude that the later curative instruction did not remedy the situation. Pruitt was entitled to a mistrial.

■ Pruitt argues that the prosecutor's improper cross-examination amounted to such flagrant prosecutorial misconduct that no further prosecution should be allowed. We conclude that the State's misconduct does not require us to bar renewed prosecution. As Pruitt concedes, when a mistrial is declared because of prosecutorial misconduct, renewed prosecution will be barred only when

> it is clear that the prosecutor, motivated by a desire to avoid an acquittal in a case which is going badly, engages in purposeful misconduct which forces the court to declare a mistrial[.]

*Muller v. State*, 478 P.2d 822, 827 (Alaska 1971).

Pruitt did not raise this issue below, and our review of the record does not convince us that the government's case was going so badly that the prosecutor purposefully sought a mistrial to avoid an acquittal. The police had Pruitt's voice on tape; Officer Hoffman testified that he recognized the voice on the tape as Pruitt's. Hortencia Rangel, the undercover agent who personally participated in the drug transaction, had previously seen a photograph of Pruitt, and she was capable of identifying him. Moreover, Judge Hanson stated that Pruitt's main defense witness, Brant Witner, was so incredible that there was no doubt in the court's mind "that he clearly perjured himself."

Upon this record, we cannot find that the prosecutor's misconduct was motivated by a desire to avoid Pruitt's acquittal. Therefore, although we reverse Pruitt's conviction, he may be retried.

The judgement of the superior court is REVERSED.