883 P.2d 657

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Charles JOSEPH, Defendant–Appellant.**

**No. 15829.**

Intermediate Court of Appeals of Hawai'i.

Oct. 20, 1994.

Richard D. Gronna (Winston Mirikitani with him on the brief), Honolulu, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Atty., City and County of Honolulu, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and HEEN and WATANABE, JJ.

HEEN, Judge.

On November 29, 1991, Defendant–Appellant Charles Joseph (Defendant) was convicted on the basis of a prior jury verdict and sentenced for the offenses of Promoting a Dangerous Drug in the Third Degree, Hawai'i Revised Statutes (HRS) § 712–1243 (1985); Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a) (Supp.1992); and Promoting a Detrimental Drug in the Third Degree, HRS § 712–1249 (1985). Defendant timely appealed, and we affirm.

## I.

At the trial that began on October 17, 1991, the State introduced evidence the police had recovered when they executed a search warrant for a room at 85–1230 Kumai-

po Street, Wai'anae, allegedly occupied by Defendant and his girl friend. The evidence included drug paraphernalia found within the room, including bong pipes, a "Pelstar" scale, "zip lock" bags, straws whose ends were heat sealed, a "two gram" scale, a marijuana pipe, a butane lighter, and a water pipe. Police testimony indicated that all of these items are commonly used in the ingestion or distribution of drugs.

One police officer described how the straws, already sealed at both ends, would be cut in half and weighed on the two gram scale. The half straw would then be filled with drugs and the cut end heated and sealed . by crimping it with a hemostat.

The State also introduced the following evidence recovered from the bottom drawer of a dresser in the room: three wallets, methamphetamine, marijuana, a bong, two pairs of scissors, two cigarette lighters, and a cut straw. One of the wallets (the wallet) held, among other things, Defendant's driver's license.

Finally, the State introduced a four-channel "scanner" [1] and a photograph of a sign on the floor next to the dresser which stated: "Keep Out of this Room Beware of Dogs Property ... [Defendant's girl friend] and Charlie." All the evidence was sent into the jury room for its examination during deliberations.

The jury began deliberating in the afternoon of October 24, 1991. On October 25, 1991, at approximately 9:53 a.m., the jury asked the court in a written message: "Can we use a straw found in Charles' wallet as evidence even if it wasn't brought up in court?" The jury continued deliberating.

At approximately 11:03 a.m. on October 25, the court met with both counsel to consider the jury's inquiry. The court examined the wallet and found several items that had not been identified during the trial.[2] Within the wallet's coin purse the court found "a straw similar to the kind of straw with one end sealed, one end opened, that was produced during the court session[.]" The court also discovered a list of numbers on a slip of laminated paper, which turned out to be a list of police radio frequencies (the list) that one of the police officers had testified was in the wallet.[3,4] Defense counsel moved for a mistrial on the ground of prosecutorial misconduct, claiming that the prosecutor was somehow responsible for the straw going into the jury room without being introduced as evidence. During the conference, the court bailiff reported that the jury had reached a verdict on all of the counts (original verdicts) and signed the appropriate verdict forms.[5] The court never viewed the verdicts. Instead the court denied the motion for a mistrial and at 11:22 a.m. responded to the jury in writing as follows: "No, you cannot use the straw found in Charles' wallet as evidence. Please deliberate and return a verdict with that in mind. Attached are new blank forms." The original verdict forms, which had already been signed by the foreperson, were placed in the case file; however, they were not received in open court and were not stamped as "filed."

1. The police officer who identified the scanner indicated that it is a device that receives, among other things, police radio frequencies.

2. It does not appear from the record that the police inventoried the contents of the wallet when it was recovered in the search. We know of no requirement that such inventories be conducted; however, this case illustrates the benefits of adopting such a procedure.

3. The numbers are the police radio frequencies. The list reads as follows:

1. 155–070 WAI'ANAE–WAHIAW
2. 155–130 PEARL CITY
3. 155–370 KALIHI
4. 155–685 HONOLULU
5. 155–520 WAIKK
6. 155–190 COMMON CAR–TO–CAR
7. 156–090 TACTICAL–SWAT
8. 155–565 TACTICAL–VICE
9. 460–250 HPD D.A.
10. 465–200 HPD D.A.

4. Other items found by the court were a business card of a deputy public defender with a handwritten notation on the back reading "Court = 10⁰⁰ AM" and a District Court Criminal Court Receipt, dated June 13, 1990, for "JOSEPH, CHARLES ALLAN", which noted the continuation of an arraignment and plea date to August 29, 1990.

5. Those verdict forms indicate the jury had found Defendant guilty.

We cannot tell from the record whether the jury resumed deliberations immediately or after a lunch break. The jury reached new verdicts (final verdicts), and at 1:38 p.m., the court convened to receive them. The court asked the foreperson if the jury "[took] into account in their deliberations the court's answer to [the jury's] communication number one?" The foreperson responded in the affirmative. The court polled the jury and, after the individual jurors indicated their agreement with the verdicts, ordered the verdicts filed.

On November 1, 1991, Defendant filed a motion for judgment of acquittal or new trial, which was denied after a hearing. After the judgment and sentence of the court, Defendant appealed.

## II.

■■■ The law is clear that a defendant is entitled to trial by a fair and impartial jury free from outside influences. *State v. Furutani,* 76 Haw. 172, 873 P.2d 51 (1994). A jury's exposure to an outside influence that could substantially prejudice the defendant's right to a fair and impartial jury creates a rebuttable presumption of prejudice. The question of whether the outside influence could substantially prejudice the defendant's right to a fair trial is ordinarily a question for the trial judge. If the trial judge answers no, then the trial judge need take no further action. However, if the trial judge finds that the outside influence could substantially prejudice the defendant's right to a fair trial, the trial judge is then required to further investigate the totality of the circumstances sur-

rounding the outside influence to determine its impact on the jury's impartiality. The totality of circumstances should include separate examination of the individual jurors to determine any influence by the extraneous matters. To overcome the presumption of prejudice created by such exposure, the outside influence must be proven harmless beyond a reasonable doubt. *Id.*

## III.

The issues raised by the appeal are: (1) Was the straw in evidence when it was discovered by the jury?[6] (2) Did the court commit reversible error in not following the *Williamson* procedure before refusing to accept the original verdicts? and (3) Did the court commit reversible error when it failed to follow *Williamson* with respect to the final verdicts? We find no reversible error.

## IV.

■■■ The law requires that items exposed to the jury must have been properly received in evidence in open court. *State v. Keliiholokai,* 58 Haw. 356, 569 P.2d 891 (1977). In our view, the straw was not properly received in evidence.

■■■ We note, first, that it is the responsibility of counsel for both sides in a trial to examine the items to be presented to the jury for their consideration to ensure that the jury is not exposed to matters not admitted into evidence.[7] *State v. Estrada,* 69 Haw. 204, 221, 738 P.2d 812, 824 (1987). In a criminal case, defense counsel may have a heavier burden to guard against such exposure, since failure to object to the inclusion of

---

6. Defendant does not raise the jury's exposure to the list as a point on appeal, although it is subject to the same argument raised against the straw. When the police officer identified the wallet, he indicated that the list was in the wallet. However, the list was not specifically introduced in evidence. During final argument, when the prosecutor encouraged the jury to examine the list, defense counsel objected on the ground that the list had not been introduced in evidence. In overruling the objection, the trial court implicitly held that the list was properly in evidence.

In accordance with the principles discussed in the opinion regarding the straw, the court erred. Nevertheless, in light of the plethora of other evidence linking Defendant with the contraband

in the room, we are convinced that the error was harmless.

7. Defense counsel's argument in the lower court that the prosecutor had committed prosecutorial misconduct in not examining the wallet before it went into the jury room is obviously unfounded. Moreover, in a pretrial hearing on Defendant's motion *in limine* attacking the evidence recovered under the search warrant, the court and both counsel discussed the fact that the list of police frequencies was in the wallet, indicating that defense counsel had examined the wallet. Therefore, everyone knew the list was there, although it does not appear from the record that anyone ever examined the list itself.

non-evidentiary material may constitute a waiver, *see Government of the Virgin Islands v. Joseph*, 685 F.2d 857 (3d Cir.1982); *United States v. Strassman*, 241 F.2d 784, 786 (2d Cir.1957); *People v. Bieber*, 835 P.2d 542 (Colo.App.1992).[8] Under the circumstances of this case, we do not deem Defendant's failure to object as a waiver, since it is rather clear that defense counsel did not know that the straw was in the wallet.

■■■ Simple logic dictates that the party wishing to introduce an item in evidence must present proper proof of its authenticity and identification. *See* A. Bowman, *Hawaii [Hawai'i] Rules of Evidence Manual* (Bowman), § 901–2 (1990). In other words, the proponent of the evidence must prove that the item is what the proponent claims it is. *Id.* The proponent of the item must "lay the foundation" for its receipt in evidence in order "to prevent inadmissible evidence from being suggested to the jury by any means." M. Graham, *Authentication and Identification—Laying an Adequate Foundation* (Graham), 25 Crim.L.Bull. 566, 566 (1989). The determination of whether a proper foundation has been established lies within the discretion of the trial court and its determination will not be overturned absent a showing of clear abuse. *State v. Evans*, 247 Mont. 218, 227, 806 P.2d 512, 518 (1991). Proper identification and foundation are established when the prosecution shows that the exhibit is connected with the crime and identified as such. *Id.* Evidence is admissible if the court, in the exercise of its wide discretion in such matters, decides that "sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 901(a)[101]m at 901–16, –17 (1983).

Citing *State v. Ferreira*, 152 Ariz. 289, 731 P.2d 1233 (1986), the State argues that when the wallet was admitted into evidence all of its contents were admitted also. However, *Ferreira* is not on point, since the article in question in that case had in fact been received in evidence.

■■■ In our view, the policies underlying the authentication and identification requirements also support the principle that the proponent should lay a sufficient foundation for each item of evidence which the proponent intends to expose to the jury, including items within a container. We recognize that there may be cases where, for practical or other reasons, it may be necessary or desirable in the trial court's discretion to consider a container's contents as having been admitted in evidence when the container was admitted. However, those cases should be limited to situations where the container's contents are unique and readily identifiable by their appearance or not subject to alteration, substitution, or change of condition. *See State v. DeSilva*, 64 Haw. 40, 636 P.2d 728 (1981).

■■■ Where the item within a container is neither unique nor readily identifiable, it should be authenticated, generally by chain of custody evidence to show at a minimum that the item is in substantially the same condition as when it was recovered. *See* Graham, at 568. "The issue is the sufficiency of identification of the item[.]" Bowman, at 901.

In this case, the State did not lay the proper foundation for the straw's introduction, the straw was not in evidence, and the jury was exposed to an outside influence. When the wallet was introduced in evidence, the police officer who recovered it testified that he had placed the wallet in a paper bag and deposited it in the evidence room at police headquarters. He identified the wallet for the jury and testified that it was in the same condition as it was when he recovered it. However, the officer never removed any of the wallet's contents or identified them for the jury. No doubt a sufficient foundation was established for the wallet's admission in evidence. However, since no evidence was presented to identify the straw, or to show that it was in the same condition as when it

---

**8.** In *People v. Bieber*, 835 P.2d 542 (Colo.App. 1992), the court held that, in view of the circumstances of the case, the jury's exposure to a plastic bag containing a white powdery sub- stance, which had not been identified or received in evidence but was found by the jury within an exhibit containing several bags of marijuana, was harmless error.

was recovered, it cannot be said that the straw was "in evidence." Indeed, the trial court implicitly, but obviously, found that the straw was not in evidence when it instructed the jury that they were not to consider it in its deliberations.

## V.

■ When the court was informed that the jury had returned the original verdicts, the court was faced with the question of what to do with those verdicts. The court made no formal ruling regarding the original verdicts; however, it is clear that the court decided that it could not accept them, i.e., the court rejected the original verdicts. The question is whether the court was authorized to do so. Although the parties have not discussed this point, we deem it necessary to do so under the circumstances.

The better procedure would have been to follow the process established in *State v. Williamson*, 72 Haw. 97, 807 P.2d 593 (1991), and further enunciated in *Furutani*. Nevertheless, we do not believe the court committed reversible error in summarily rejecting the original verdicts.

Other jurisdictions have held that the trial court may only reject the jury's verdict if the verdict's form is incomplete, ambiguous, inconsistent, or otherwise prevents the court from passing judgment on the verdict. *Misztal v. State*, 598 N.E.2d 1119, 1123 (Ind. App. 3 Dist.1992); *State v. Hampton*, 294 N.C. 242, 247–48, 229 S.E.2d 835, 839 (1978); *State v. Rhinehart*, 267 N.C. 470, 148 S.E.2d 651 (1966); *State v. O'Neal*, 67 N.C.App. 65, 70–71, 312 S.E.2d 493, 496 (1984).

However, when the jury may have been exposed to or considered items not admitted into evidence, the trial court is not required to accept the verdict but may refuse it and order further deliberations. *Cf. State v. Howard*, 224 Kan. 208, 579 P.2d 702 (1978).

In *Howard*, the Kansas Supreme Court upheld the lower court's acceptance of a verdict that was returned while the court was considering a response to a question from the jury. The Kansas Supreme Court held that the defendant presented no basis for inferring that the jury considered any evidence

other than that properly admitted by the court, stating: "The logical conclusion is the jury clarified the matter themselves based on the court's existing instructions." *Id.* at 213, 579 P.2d at 706. Presumably, had the defendant been able to provide a basis for inferring that non-evidentiary matters had influenced the verdict, the Kansas Supreme Court would have ruled otherwise.

In *State v. Reid*, 166 Wis.2d 139, 479 N.W.2d 572 (1991), the jury rendered a verdict at a time when the trial court was investigating the possibility that perjured testimony had been introduced at trial. The trial court refused to view the verdict and ordered the jury to continue deliberating. When the trial court confirmed the perjury, it summoned the jury, destroyed the verdict, declared a mistrial, and discharged the jury. Defendant appealed from a denial of his postconviction motion to vacate his ensuing conviction on double jeopardy grounds. In affirming the conviction, the Wisconsin Supreme Court held that,

> the trial court has the authority to refuse a verdict and order further deliberations up to the point where the verdict is accepted. . . . [A] jury's verdict is not binding on the court simply because the jury tendered a verdict to the court. . . . a trial court may declare a mistrial up to the point the jury's verdict is accepted.

*Id.* at 144, 479 N.W.2d at 574. Since the trial court had never viewed the verdict, announced it, or polled the jury, the Wisconsin Supreme Court held that the trial court had authority to refuse the verdict and declare a mistrial.

In this case, as in *Reid*, the lower court never viewed the original verdicts. Although the court might have been better advised to have followed the procedure of examining the jurors individually, its actions were directed to preserving the integrity of the trial and avoiding the expense of a new trial. In essence, the court determined that the danger of the straw having affected the jury's verdicts required it to reject those verdicts and direct the jury to continue deliberations in accordance with the special instruction. Under the circumstances we do not think the court erred in doing so.

## VI.

After asking the foreperson whether the jury had complied with the court's response to the jury's question and confirming that each juror agreed with the final verdicts, the court was apparently satisfied that the jury had complied with its special instruction and that the straw had not affected the verdicts. The question is whether the lower court erred in accepting the final verdicts or whether the court should have examined the jurors individually in accordance with *Williamson*. We find no error.

The jury is presumed to follow the court's instructions. *State v. Austin*, 70 Haw. 300, 769 P.2d 1098 (1989). However, circumstances of the timing of the instruction and the nature of the erroneous action it is intended to correct, can combine to overcome the presumption, where the defendant's right to a fair trial is substantially prejudiced. *Pruitt v. State*, 829 P.2d 1197 (Alaska 1992). In *Pruitt*, the Alaska Supreme Court reversed the defendant's conviction on the ground that the trial court should have granted his motion for a mistrial based on the prosecution's improper cross-examination. The cross-examination and motion for mistrial occurred on a Friday. The trial court took the matter under advisement over the weekend and on Monday gave the jury a curative instruction. The Alaska Supreme Court held that under the circumstances the improper cross-examination could have had a significant impact on the jury and undercut the defense "in an unfair and prejudicial manner." *Id.* at 1200.

Under the circumstances of this case, we think it correct to presume that the jury followed the special instruction. It is important to note that the instruction came shortly after the jury's exposure to the straw. Thus, the jury received the instruction when the straw was fresh in its mind and at a time when it had already rendered the original verdicts, presumably on the basis of the court's instructions at the close of the evidence. It is most reasonable to infer that, even if the original verdicts were influenced by the straw, the special instruction clearly emphasized to the jury that the court would not accept the original verdicts and that they would have to reassess all the evidence, ignore the straw, and render new verdicts. The final verdicts came so soon after the special instruction was delivered that it cannot reasonably be argued that the jury did not follow it.

## CONCLUSION

For the foregoing reasons we conclude that the lower court did not err in denying Defendant's motion for mistrial and his post-trial motion for a judgment of acquittal or a new trial.

Affirmed.