**Electronically Filed**
**Supreme Court**
**SCWC-13-0002852**
**15-MAR-2016**
**08:08 AM**

SCWC-13-0002852

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

_____

STATE OF HAWAIʻI, Respondent/Plaintiff-Appellee,

vs.

COLIN D. GARDNER, Petitioner/Defendant-Appellant.

_____

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0002852; CASE NO. 2DTC-13-004202)

SUMMARY DISPOSITION ORDER
(By: Recktenwald, C.J., Nakayama, McKenna, Pollack, and Wilson, JJ.)

## I.   Introduction

On January 19, 2013, Petitioner/Defendant-Appellant Colin Gardner ("Gardner") was cited by Officer Carl Eguia ("Officer Eguia" or "Citing Officer") for excessive speeding. At a bench trial in the District Court of the Second Circuit, Wailuku Division ("district court"),[1] Gardner orally moved to suppress the Citing Officer's laser gun reading on the basis

_____

[1] The Honorable Richard A. Priest, Jr. presided.

that proper foundation for the gun had not been laid. The
district court denied the motion and found Gardner guilty.

Gardner timely applied for writ of certiorari
("Application") on September 29, 2015 from an August 3, 2015
Judgment entered by the Intermediate Court of Appeals ("ICA")
pursuant to its June 30, 2015 Summary Disposition Order ("SDO").
Although the State submitted a confession of error in its
Answering Brief, the ICA affirmed the district court's "Notice
of Entry of Judgment and/or Order and Plea/Judgment, filed on
July 19, 2003."[2] State v. Gardner, No. CAAP-13-0002852, at 7
(App. June 30, 2015) (SDO).

In his Application, Gardner presents the following
question: "Whether the ICA gravely erred in holding that the
prosecution established a sufficient foundation for the
admission of the speed reading generated by the Laser Technology
Incorporated 20-20 TruSpeed laser gun." Gardner argues two
points: (1) "the State failed to establish that the nature and
extent of Officer Eguia's training in the operation of the laser
gun met the requirements set forth by the manufacturer," and (2)
"the State did not prove that the specific laser device used was
properly calibrated either through inspection or servicing by
the manufacturer's representatives." Gardner asks that the

---

[2] After the Notice of Appeal was filed, the district court amended the
judgment on May 6, 2014 with respect to the value of the fine and imposition
of community service.

2

district court's judgment be reversed.  The State did not respond to the Application.

This court accepted Gardner's Application on November 10, 2015.  For the following reasons, this court holds the ICA erred in concluding that the laser speed reading was admissible.

## II.  Background

### A.  Factual Background

Around 4:00 p.m. on January 9, 2013, Officer Carl Eguia tested his LTI 20/20 TruSpeed laser gun ("laser gun") to see if it was working properly.  The laser gun passed the requisite tests.  Around 6:43 p.m. that same day, Officer Eguia observed a vehicle traveling north on Mokulele Highway "at a high rate of speed" in a 45-miles-per-hour zone.  He used his laser gun to take a reading of the vehicle's speed by aiming at the vehicle's front "license plate area."  The laser gun indicated that the vehicle was traveling at 76 miles per hour. Officer Eguia then conducted a traffic stop on the vehicle, and issued the driver of the vehicle, Gardner, Citation No. 2DTC-13-004202, for violating "HRS 291C-105(a)(1) Excessive Speeding – 30+ MPH over speed limit."[3]

---

[3] "No person shall drive a motor vehicle at a speed exceeding . . . [t]he applicable state or county speed limit by thirty miles per hour or more." HRS § 291C-105(a)(1) (2007).

## B.    District Court Proceedings

A bench trial was held on July 19, 2013.  Officer Eguia testified as to the events of January 9, 2013, and the extent of his training with respect to the laser gun. Specifically, Officer Eguia was trained on August 24, 2012 to "test[] and operate[]" the laser gun by way of classroom instruction and written and practical tests.  As part of the training, Officer Eguia was given and read the "LTI 20-20 TruSpeed laser manual," which the course "went through."  The training covered topics such as "the utilization of the laser, how to test and make sure that it's working properly[,] . . . how to get speeds of vehicles[,] . . . what to do if the laser is not working properly[,] and how to down [take out of commission] the laser itself."  During the course, Officer Eguia "practiced . . . doing the four tests that have to be conducted [prior to taking the laser on the roadway, and upon returning]" to ensure the laser gun was working properly.

Officer Eguia's instructor was fellow Officer Dennis Arns ("Officer Arns"), who was certified as an instructor by Bob Long ("Mr. Long"), a representative of LTI, the laser gun's manufacturer.[4]  Officer Eguia was subsequently also instructed by Mr. Long on how to instruct a course on the laser gun's use.

---

[4] Mr. Long was not an employee with LTI, however.  Officer Eguia had testified that he "[n]ever met anybody actually from LTI who is employed by LTI."

After Officer Eguia was excused, Gardner moved to suppress the reading from the laser gun on the basis that the proper foundation pursuant to State v. Gonzalez, 128 Hawai'i 314, 288 P.3d 788 (2012), State v. Manewa, 115 Hawai'i 343, 167 P.3d 336 (2007), State v. Assaye, 121 Hawai'i 204, 216 P.3d 1227 (2009), and State v. Wallace, 80 Hawai'i 382, 910 P.2d 695 (1996), was not laid, as

> there [was]n't any competent evidence in the record as to the nature and extent of the training or as to the proper use and the manufacturer's recommendations [of the laser gun] . . . .  All of [Officer Eguia's] information and testimony as to the testing that he did as to his training was based on hearsay information obtained strictly from the manual that he received and not from any direct knowledge he has from LTI itself."

He further argued that there was no expert testimony regarding the margin of error of the laser gun, as required by State v. Fitzwater, 122 Hawai'i 354, 227 P.3d 520 (2010).  The district court denied the motion, relying on State v. Stoa, 112 Hawai'i 260, 145 P.3d 803 (App. 2006), for the proposition that the LTI was "specifically . . . approve[d] . . . as a laser speed gun."  The district court acknowledged that Stoa was overruled by Assaye, but that it was on other grounds.  The district court then stated: "Admissibility in the test results then depend upon a foundation [that] assures the accuracy of the particular application[] [of the laser gun].  And in this phase of the proceedings, I'm going to find the [S]tate has met its burden

5

under that [standard]."  Gardner then moved for a judgment of acquittal based on the State's failure to meet its burden beyond a reasonable doubt as to each and every element of the crime, which was largely based upon Gardner's assertion that an improper foundation was laid for the admission of the laser gun speed reading with respect to Officer Eguia's training.  After the court denied the motion, Gardner was called to the stand.

Gardner testified that he had turned on the cruise control function of his car prior to turning on to Mokulele Highway where Officer Eguia spotted him.  His speedometer read that he was traveling at 45 miles per hour.  To his knowledge, his car's speedometer and cruise control function were working properly.  There was a steady stream of traffic that day, both in front of and behind Gardner's vehicle.  Mokulele is a two-lane highway in each direction.  Gardner drove in the right lane, and vehicles passed him on the left.  Gardner's vehicle did not have a front license plate.  In his closing argument, Gardner's counsel argued, among other things,

> [N]otwithstanding the laser gun readout, there just isn't evidence in the record to support specifically what speed Mr. Gardner was going . . . .
> [Gardner] was going 45 miles per hour based on the fact that his car was functioning properly on the day that he did set his cruise control at the legal speed limit as well as kept it at that speed.  It's not enough to show what his speed was, and we're not conceding that there is credible evidence in the record or that the record has been made to lay the foundation properly to get the laser gun reading in.

The district court ultimately adjudged Gardner guilty, and imposed a fine of $500 and a thirty-day suspension of his driver's license. The district court also imposed a mandatory driver retraining course, and ordered that fines, fees, and assessments be paid within six months.

## C. Appeal to the ICA

Gardner timely filed a Notice of Appeal to the ICA. Gardner argued that the district court's "Notice of Entry of Judgment and/or Order and Plea/Judgment filed on July 19, 2013" be reversed because:

> The district court erred in denying Gardner's motion to strike/suppress the reading of Officer Eguia's laser gun because the State failed to establish that (1) the laser gun was tested according to the manufacturer's recommended procedures and found to be working properly, (2) the nature and extent of Officer Eguia's training in the use of the laser gun met the requirements indicated by the manufacturer, (3) the laser gun had been inspected and serviced as required by the manufacturer, and (4) Officer Eguia was [] qualified to testify as to the speed reading of the laser gun.
> . . . .
> . . . Absent Officer Eguia's testimony [regarding the speed reading of his laser gun], the State adduced no other evidence at trial sufficient to prove that Gardner drove at a speed exceeding the applicable speed limit by 30 miles per hour or more.

The State agreed that "the district court erred in concluding that the State laid sufficient foundation for the speed reading given by the laser gun, and in denying Gardner's Motion to Suppress the speed reading of 76 miles per hour." Among other things, the State noted that "the record is silent" as to (1) "what type of training is recommended by the manufacturer" of

7

the laser gun, (2) what procedures the manufacturer required in determining a particular gun's margin of error, and (3) whether Officer Eguia received training from an employee or authorized representative of the laser gun manufacturer. The State "respectfully request[ed] that [the ICA] reverse Gardner's conviction and sentence entered in the district court's Notice of Entry of Judgment and/or Order Plea/Judgment filed on July 19, 2013."

In its June 30, 2015 Summary Disposition Order upon reviewing the merits, the ICA held that "evidence [showing] Officer Eguia was trained and certified by the manufacturer's representative as an instructor in the use of the laser gun, together with the evidence of the extent of his training" was sufficient to show that the Citing Officer's training met the manufacturer's requirements. Gardner, SDO at 5 (citing State v. Amiral, 132 Hawai'i 170, 179, 319 P.3d 1178, 1187 (2014)); see also id. at 3-5 (quoting Officer Eguia's trial testimony). The ICA further held that, pursuant to Gonzalez, 128 Hawai'i 314, 288 P.3d 788, inspection or service of the laser gun by the manufacturer was not necessary , and that the laser gun was working properly based on Officer Eguia's testimony that (1) he read the manufacturer's manual for the laser gun several times, (2) his training was based on and conducted in conformance with the manual, (3) the manual contained instructions for four

8

accuracy tests, and (4) he conducted those four tests before and after using it to read Gardner's speed. See id. at 6. Based on the foregoing, the ICA concluded that the district court did not abuse its discretion in admitting the laser gun speed reading, and that therefore "the State adduced sufficient evidence to prove every element of Gardner's offense beyond a reasonable doubt." Id. at 7 (citing Assaye, 121 Hawai'i at 216, 216 P.3d at 1239).

Accordingly, the ICA affirmed the "Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on July 19, 2013." Id.

### III.  Standard of Review

"When a question arises regarding the necessary foundation for the introduction of evidence, '[t]he determination of whether proper foundation has been established lies within the discretion of the trial court[,] and its determination will not be overturned absent a showing of clear abuse.'" State v. Loa, 83 Hawai'i 335, 348, 926 P.2d 1258, 1271 (1996) (quoting State v. Joseph, 77 Hawai'i 235, 239, 883 P.2d 657, 661 (App. 1994)) (brackets in original).

### IV.  Discussion

To establish the requisite foundation for the admission of a speed reading from a laser gun, the prosecution

9

must present evidence demonstrating two requirements: (1) the operator of the laser gun received training, the nature and extent of which meet the laser gun manufacturer's requirements, and (2) that prior to making the at-issue reading, the laser gun was tested and determined to be operating properly according to the manufacturer's established procedures.  See Amiral, 132 Hawai'i at 178, 319 P.3d at 1186 (quoting Assaye, 121 Hawai'i at 215, 216 P.3d at 1238); Assaye, 121 Hawai'i at 213, 216 P.3d at 1236 (citing Manewa, 115 Hawai'i at 354, 167 P.3d at 347).

With respect to the first requirement that the laser gun operator receive training that meets the laser gun manufacturer's requirements, the ICA stated that the State

> "could . . . establish[] the type of training the
> manufacturer recommended" by providing the court with
> evidence that course instructors were "actually certified
> by the manufacturer or had been trained by the
> manufacturer," "that the training course itself was
> approved by the manufacturer or was consistent with the
> manufacturer's requirements," and that "the [operator]
> learn[ed] to perform the four tests" set forth in the laser
> gun's manual to verify its accuracy.

Gardner, SDO at 3 (quoting dicta from Amiral, 132 Hawai'i at 179, 319 P.3d at 1187) (alterations in original).  The ICA noted that the Citing Officer received both training to operate the laser gun ("user training"), and training to instruct on the use of the laser gun ("instructor training").  Although the user training was conducted by a fellow police officer, Dennis Arns (who was certified as an instructor by Bob Long, a

10

representative of the manufacturer), the instructor training was conducted by Mr. Long.  Officer Eguia received instructor certification from Mr. Long that stated "LTI certification." The ICA also noted the scope of Officer Eguia's user training pursuant to his testimony.  See Gardner, SDO at 5.  The ICA concluded that "the evidence presented, which included that Officer Eguia was trained and certified by the manufacturer's representative as an instructor in the use of the [l]aser [g]un, together with the evidence of the extent of his training, was sufficient to show that Officer Eguia's training met the requirements indicated by the manufacturer."  Id. at 5 (citation and internal quotation marks omitted).

In sum, the evidence shows that Mr. Long was a representative of the laser gun manufacturer; both Officers Arns and Eguia received instructor training from Mr. Long; Officer Arns conducted Officer Eguia's user training; and Officer Eguia learned how to conduct the manufacturer's accuracy tests through his training with Officer Arns.  There is no evidence that the user training course taught by Officer Arns, which was completed by Officer Eguia, was "itself . . . approved by the manufacturer or was consistent with the manufacturer's requirements."  The ICA homed in on the fact, however, that the instructor training was conducted by Mr. Long, the laser gun manufacturer's representative.  Thus, presumably, with respect to how to

11

instruct on the use of the laser gun, the prosecution could establish that Officer Eguia was taught by the manufacturer through its representative, Mr. Long, and that Mr. Long's instructor course was approved by the manufacturer.

Lacking, however, is any evidence regarding the nature and extent of Officer Eguia's instructor training from the manufacturer.  Specifically, there is no evidence that Mr. Long taught Officer Eguia how to execute the manufacturer's required tests to verify the accuracy of the laser gun.  Additionally, Officer Eguia did not testify that he executed those tests pursuant to what he learned from Mr. Long.  Without such a showing, the prosecution failed to demonstrate that the instructor training Officer Eguia received from Mr. Long satisfies the first requirement.

It is possible that Officer Eguia may have had personal knowledge as to whether Officer Arn's user course (which Officer Eguia took to learn how to use the laser gun) complied with the manufacturer's requirements for such a course (as Officer Eguia was taught by Mr. Long as to how to instruct such a user course).  The record is bare of any testimony, however, that the user training Officer Eguia received from Officer Arns comported with the manufacturer's requirements.

As the requirement regarding the nature and extent of Officer Eguia's training was not met, the State failed to lay a

12

proper foundation for the admission of the laser gun reading. This requirement is well established in our case law. Accordingly, the ICA erred in determining that the district court did not abuse its discretion in admitting the laser gun reading.  Reversal of the judgment, as requested by both Gardner and the State, is warranted.

### V.   Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that the ICA's Judgment on Appeal is reversed and the district court's "Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on July 19, 2003" is reversed.

DATED:  Honolulu, Hawai'i, March 15, 2016.

James S. Tabe
for petitioner

Artemio C. Baxa
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

