STATE of Wisconsin, Plaintiff-Respondent,

v.

James Ray MENDOZA, Defendant-Petitioner.†

Court of Appeals

No. 80–303–CR. Submitted on briefs January 21, 1981.
—Decided March 11, 1981.
(Also reported in 305 N.W.2d 166.)

† Petition to review denied.

For the defendant-petitioner the cause was submitted on the briefs of *Ann B. Petersen,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Cannon, J.

CANNON, J.   Defendant has sought leave to appeal from a nonfinal order denying his motion to dismiss. Defendant claims that in ordering a mistrial and a new trial because of juror illness, the trial court has placed him in double jeopardy contrary to the fifth and fourteenth amendments of the United States Constitution and art. I, §8 of the Wisconsin Constitution. We grant leave to appeal, and affirm on the merits.

Defendant was charged with five counts of delivery of heroin contrary to secs. 161.14 (3) (k) and 161.41 (1) (a), Stats.  Trial commenced February 4, 1980, with jury selection taking one and one-half days.  No alternate jurors were selected, and the jury was not sequestered.  On February 6, 1980, opening statements were made and one witness began to testify.  Scheduling conflicts caused the trial to be adjourned to February 11, 1980.  On February 11, 1980, the trial court learned that one of the jurors had fractured his ankle.  The jurors were excused until February 14, 1980.

On February 13, 1980, the trial court learned that the juror would be immobilized for 10 to 14 days.  The trial court offered the parties two alternatives: to proceed with 11 jurors or to declare a mistrial, with retrial beginning that day or the following Monday.  When the defendant refused to proceed with 11 jurors, the court declared a mistrial.

Prior to the declaration of a mistrial, defendant had moved for acquittal.  Defendant asserted, and the state admitted, that the state would not be able to prove delivery of diacetylmorphine (base heroin), but would only be able to prove delivery of diacetylmorphine hydrochloride

(a salt of heroin). The motions were found to be premature and were denied.

When the parties returned to court to begin the new trial, the defendant moved to dismiss on double jeopardy grounds. The trial court denied the motion and entered two orders, one denying the motion challenging the declaration of the mistrial and the other denying the motion challenging the refusal to acquit the defendant. Defendant appeals from the former.

Two issues are raised for our determination:

1. Should leave to appeal be granted pursuant to sec. 808.03(2)(b) and (c), Stats; and
2. Will reprosecution of defendant following a *sua sponte* declaration of a mistrial due to juror illness place defendant in double jeopardy contrary to the fifth and fourteenth amendments of the United States Constitution and art. I, §8 of the Wisconsin Constitution?

We grant leave to appeal. However, we hold that retrial under these circumstances does not constitute double jeopardy and affirm.

## LEAVE TO APPEAL

Defendant has sought leave to appeal pursuant to sec. 808.03(2)(b) and (c), Stats. The state agrees that leave should be granted.

A pretrial order denying a motion to dismiss on double jeopardy grounds is a nonfinal order appealable only by permission. *State v. Jenich,* 94 Wis.2d 97a, 292 N.W.2d 348, (1980) (*per curiam on motion for reconsideration*). Whether permissive appeals should be granted rests within our sound discretion. However, when presented with a claim of double jeopardy, review is often necessary due to the serious nature of the con-

stitutional questions presented. *Id.* at 97a–97b, 292 N.W. 2d at 349.

We agree with the parties that leave to appeal should be granted. Substantial and irreparable injury could result if defendant were improperly required to undergo a second trial. Defendant might be subjected to the strain of a second trial and to the unfairness associated with a second opportunity to convict, which gives rise to potential conflict with the guarantees provided by the double jeopardy provisions of both the state and federal constitutions. We further determine that defendant's claim is not frivolous, but is substantial.

■

Immediate review would also provide us with an opportunity to further clarify what constitutes "manifest necessity" justifying declaration of a mistrial and retrial of a defendant. The issue of juror incapacity has not been previously addressed by the Wisconsin courts.

Accordingly, leave to appeal is granted.

## DOUBLE JEOPARDY CLAIM

Defendant raises two challenges to the declaration of the mistrial: first, that the record does not disclose that it was justified by a manifest necessity; and, second, that it was declared to afford the prosecution a second and better opportunity to convict the defendant. We find no merit in either contention.

■

Where reprosecution is sought following a mistrial declared over the defendant's objection, the state must prove that the mistrial was a "manifest necessity." *Arizona v. Washington,* 434 U.S. 497, 505 (1978). This standard requires showing a "high degree" of necessity before a mistrial may be deemed appropriate. *Id.* at 506.

The decision whether to grant a mistrial lies within the sound discretion of the trial court. *Id.* at 514; *Wheeler v. State,* 87 Wis.2d 626, 631, 275 N.W.2d 651, 653 (1979). However, the amount of deference to be accorded the trial court falls along a broad spectrum, dependent upon the reason for the mistrial. *Arizona v. Washington, supra,* at 507–10.

The deference to be accorded the trial court's decision to declare a mistrial when presented with juror incapacity has not been previously addressed by the Wisconsin courts. We determine that the trial court should be vested with broad discretion as it is in the best position to evaluate the competing factors which must be weighed in declaring a mistrial.[1]

Defendant contends that the "manifest necessity" standard was not met since the record does not show that the trial court expressly considered a continuance as an alternative to a mistrial. We do not agree that this omission constitutes error of a constitutional dimension.

The approach proffered by defendant has been expressly rejected. Failure "to find 'manifest necessity' in those words or to articulate on the record all the factors which informed the deliberate exercise of his [the trial judge's] discretion" will not subject a mistrial declaration to constitutional attack on double jeopardy grounds. *Arizona v. Washington, supra,* at 517.

---

[1] *See Dunkerley v. Hogan,* 579 F.2d 141, 145 (2d Cir. 1978), *cert. denied sub nom. Hogan v. Dunkerley,* 439 U.S. 1090 (1979) (where defendant's illness produces mistrial, although the trial court was determined on appeal to have abused its discretion.). *See also State v. Cole,* 286 Or. 411, 595 P.2d 466, 473, *cert. denied sub nom. Cole v. Oregon,* 444 U.S. 968 (1979) (where judge's illness produces mistrial).

The record discloses that the trial court properly exercised its discretion in declaring a mistrial. It was only after learning of the seriousness of the injury and duration of the juror's incapacitation that the trial court excused the juror. The trial court then offered the parties the alternatives of proceeding with the remaining jurors or a mistrial. After the defendant rejected the first option, a mistrial was declared. The stated reasons for the mistrial were the juror's injury, and the uncertainty of his return date.

The record further discloses that the trial court recognized the substantial interest that all parties had in continuing the case with the existing jury. Consideration was also given to the state's insistence on giving this case high priority and in arranging for its quick disposition. The court solicited and heard arguments of counsel on the options available.[2] Defendant demanded that the trial be continued with the sworn jurors, including the injured juror.

We are unable to conclude that the trial court acted precipitously and abused its discretion in declaring a mistrial. Careful consideration was given to the available alternatives, and the competing factors involved in selecting an alternative. We will not find constitutional error for failure to make an explicit finding on the propriety of granting a continuance.[3] Implicit in the trial court's reliance on the uncertainty of the juror's return date is the consideration of a continuance.

We hold that the declaration of a mistrial under the circumstances presented here comports with the "manifest necessity" standard.

---

[2] It is the presence of these reasons on the record which causes us to reach a conclusion contrary to that of the court in *Dunkerley v. Hogan, supra* note 1, at 145–47.

[3] *Dunkerley v. Hogan, supra* note 1, at 146.

Defendant finally contends that double jeopardy has attached because the mistrial affords the state a second and more favorable opportunity to reprosecute the defendant. In support of this proposition, defendant cites *Downum v. United States,* 372 U.S. 734, 736 (1963). This contention is without merit.

In a subsequent decision, *United States v. Jorn,* 400 U.S. 470, 482–83 (1971), the Supreme Court expressly disavowed the "who benefits" approach advocated by defendant. The Court in *Jorn, id.,* at 480 recognized that the multitude of factors affecting criminal proceedings —among them juror health—makes the application of mechanical formulas to prevent retrial unrealistic. The Court instead adopted the following approach:

Yet we cannot evolve rules based on the source of the particular problem giving rise to a question whether a mistrial should or should not be declared, because, even in circumstances where the problem reflects error on the part of one counsel or the other, the trial judge must still take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal.

In sum, counsel for both sides perform in an imperfect world; in this area, bright-line rules based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the Government and the defendant. The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee. [Citation omitted.] Alternatively, the judge must bear in mind the potential risks of abuse by the defendant of society's unwillingness to unnecessarily subject him to repeated prosecutions. Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate. *Id.* at 486.

In the absence of bad faith or intent to harass the defendant[4] we will not preclude retrial of a defendant where the "manifest necessity" test has been amply satisfied by some other factor. We find no suggestion in the record that the trial court here was improperly motivated in declaring a mistrial and reject defendant's contention that the mistrial was granted merely to avoid an acquittal.[5] The court was instead presented with an injured juror whose return date was uncertain, and chose to pursue the only reasonable alternative open to it: declaring a mistrial.

We, accordingly, find no error in the declaration of the mistrial and retrial of defendant and affirm.

*By the Court.*—Order affirmed.

---

[4] Subsequent references to the *Downum* test have generally been limited to cases where the defendant has been forced to seek a mistrial due to bad faith conduct of the judge or prosecutor, *Lee v. United States*, 432 U.S. 23 (1977); *United States v. Dinitz*, 424 U.S. 600 (1976), or where a new trial is sought following reversal on appeal for insufficient evidence. *Burks v. United States*, 437 U.S. 1 (1978). In all these cases, emphasis has been placed on the purposeful nature of the retrial.

[5] Even if this were the only motivation, a constitutional challenge might not succeed. Retrial has been upheld where the interests of public justice could only be satisfied by affording a second opportunity to convict where the indictment was insufficient in the first trial. *Illinois v. Somerville*, 410 U.S. 458, 459 (1973).