STATE of Wisconsin, Plaintiff-Respondent,

v.

James REID, Defendant-Appellant.†

Court of Appeals

*No. 91-1102-CR. Submitted on briefs November 1, 1991.—Decided December 11, 1991.*

(Also reported in 479 N.W.2d 572.)

†Petition to review denied.

On behalf of the defendant-appellant the cause was submitted on the briefs of *John Anthony Ward* of Kenosha.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general and *Sally L. Wellman,* assistant attorney general.

Before Brown, Anderson and Snyder, JJ.

ANDERSON, J. James Reid appeals from a post-conviction order denying his motion to vacate the judgment of conviction on double jeopardy grounds. The issue on appeal is whether double jeopardy barred a second trial. The trial court declared a mistrial of the first trial after the jury reached a verdict but before the court accepted the verdict. The court declared a mistrial because two of the defendant's witnesses perjured themselves and the perjury was not known until the jury was deliberating. In the second trial, Reid was found guilty of sexual assault of a child. Because we conclude that the court did not abuse its discretion in declaring a mistrial, double jeopardy did not bar the second trial. Thus, we affirm the order.

## I. Facts

Reid was charged with sexual assault of a child, contrary to sec. 948.02(1), Stats. The physical contact occurred at a roller skating rink. One issue was whether Reid innocently touched the child or whether he touched her with the purpose of sexual gratification. Carol Lewis and Victor Browne testified for Reid and each stated that they were present at the roller rink when the contact occurred. Both testified that Reid placed his hand around the child's back because Reid was trying to stop her from falling. Both Lewis and Browne testified that

142

they are not related to Reid and that they do not know him.

After the jury began deliberations, the state presented evidence that Lewis was Reid's sister. The state did not become aware of the information until the day of the trial. The state moved for a mistrial. The court ordered the state to investigate the allegation. The court dismissed the jury until the following morning.

By the time the jury assembled the following morning, it had reached a verdict. Without looking at the verdict, the court returned the verdict to the jury and sent it back to conduct more deliberations. The state then presented overwhelming and irrefutable evidence that Lewis was Reid's sister. After examining the evidence, the court determined that Lewis committed perjury when she testified that she was not related to Reid. The court found that the perjury went to a material and significant fact. The court found that defense counsel was unaware of the perjury. Defense counsel declined the opportunity to have testimony before the jury on the identity of the witnesses.

The jury was then called back to the courtroom. The court ordered the verdict destroyed and declared a mistrial. Nowhere in the record does it show that the trial court saw the verdict. The court told the jury that a fraud was worked on it and the court. In its subsequent order, the court wrote that taking all the circumstances together, there was a "manifest necessity" for the mistrial. The court wrote that it was not making a credibility determination, but that it was persuaded to grant a mistrial based on the perjury. The court stated that a mistrial was a better remedy than reopening the case because the "jury would be so incensed . . . upon finding out [a] hoax . . . was played on them, that a fair determination of the facts could not have been made."

## II. The Verdict

We begin by addressing Reid's argument that the trial court did not have the authority to refuse the verdict because the jury tendered the verdict to the court. The jury's act of tendering a verdict to the court does not deprive the court of the authority to refuse the verdict. The court can refuse an inconsistent or ambiguous verdict before receiving it and can require the jury to redeliberate. *See Westfall v. Kottke,* 110 Wis. 2d 86, 96, 328 N.W.2d 481, 487 (1983); *State v. Kuenzli,* 208 Wis. 340, 346, 242 N.W. 147, 149 (1932). The court, after polling the jury and discovering a dissent, can refuse an otherwise nondefective verdict and direct the jury to redeliberate. *See State v. Austin,* 6 Wis. 203 (*205), 206 (*208) (1858). If redeliberations result in a hung jury, the court can *sua sponte* declare a mistrial. *See State v. DuFrame,* 107 Wis. 2d 300, 304–06, 320 N.W.2d 210, 212–13 (Ct. App. 1982). Once the court has accepted the verdict, however, it cannot order the jury to redeliberate. *See State v. Knight,* 143 Wis. 2d 408, 416–18, 421 N.W.2d 847, 850–51 (1988).

The above cases illustrate that the trial court has the authority to refuse a verdict and order further deliberations up to the point where the verdict is accepted. These cases illustrate that a jury's verdict is not binding on the court simply because the jury tendered a verdict to the court. Therefore, we conclude that a trial court may declare a mistrial up to the point the jury's verdict is accepted.

A jury's verdict is not accepted until it is received in open court, the results announced, the jury polled, if requested, and the judgment entered. *See Smith v. State,*

51 Wis. 615, 619, 8 N.W. 410, 411 (1881). The record here shows that the verdict was destroyed before the trial court viewed it, announced it, polled the jury or entered judgment. Therefore, the trial court had the authority to refuse the verdict and to declare a mistrial.

Reid properly points to the rule of law that once an otherwise nondefective verdict is delivered to the court for acceptance, the court cannot refuse to accept the verdict because it does not comport with the court's own opinion of the case. *Knight,* 143 Wis. 2d at 416, 421 N.W.2d at 850. In this case, the court did not refuse the verdict because it did not agree with the verdict. The court never viewed the verdict.[1]

III. "Manifest Necessity"

We conclude that the trial court did not abuse its discretion when it declared a mistrial because of a "manifest necessity." Jeopardy attaches upon the swearing of the jury. Section 972.07(2), Stats. Under the federal and state constitutions a defendant may not be twice put in jeopardy for the same offense. U.S. Const. amend. V; Wis. Const. art. I, sec. 8. Reprosecution will be barred under the double jeopardy clause unless there is a "manifest necessity" for the mistrial. *State v. Copening,* 100 Wis. 2d 700, 709, 303 N.W.2d 821, 826 (1981). The trial court's determination of "manifest necessity" is discretionary and is entitled to considerable deference on review. *See id.*

On review of the trial court's decision, the test is whether, under all the facts and circumstances, giving

---

[1]We decline Reid's invitation to assume that the jury verdict was in proper form and was an acquittal.

deference to the trial court's firsthand knowledge, it was reasonable to grant a mistrial under the "manifest necessity" rule. *Id.* at 710, 303 N.W.2d at 826–27. The "manifest necessity" test requires not just necessity but a "high degree" thereof and precludes a trial court from ordering a mistrial irrationally or irresponsibly. *Id.* at 711, 303 N.W.2d at 827.

Reid argues that the court was motivated to declare a mistrial because the state's case was weak due to its unpreparedness to cross-examine the witnesses. We find no suggestion in the record that the court was motivated by this reason. The court was motivated by the significance of the perjury, the involvement of Reid in committing the perjury, and the fairness to Reid. The record shows that there was a high degree of necessity for the mistrial and the decision was not irrational or irresponsible.

The court's finding of perjury was based on overwhelming and irrefutable evidence after a complete fact-finding hearing. The crux of the evidence at trial was the girl's and each witness' rendition of the events. The witnesses who committed perjury were crucial to the defense. Reid's eyewitnesses intentionally portrayed themselves as objective and disinterested third parties. Reid's opening and closing arguments emphasized this claim. Their denial of any relationship with Reid severely undermined the jury's truth-seeking function. Because the highest priority in a trial is the search for truth, *see Stivarius v. DiVall,* 121 Wis. 2d 145, 158, 358 N.W.2d 530, 536 (1984), and the witness' perjury in this case thwarted this function, the court did not abuse its discretion in ordering a mistrial.

■

The trial court properly considered the alternative of recalling the witnesses instead of declaring a mistrial. *See Copening,* 100 Wis. 2d at 711, 303 N.W.2d at 827. Based on the trial court's firsthand knowledge and observation, the trial court believed that the jury would be angry with the witnesses and Reid and that Reid would not receive a fair trial before an impartial jury. The trial court did not invade the province of the jury and make credibility determinations.[2] The court did not decide whether the witnesses were worthy of belief. It concluded that informing the jurors about the perjury would prevent Reid from receiving a fair trial. We cannot conclude that the court abused its discretion in finding a "manifest necessity" for a mistrial.

■

A mistrial was further necessary because a party cannot benefit from defrauding the court. The right to have a trial continued to judgment must sometimes be subordinated to the public's interest in fair trials designed to end in just judgments. *State v. Duckett,* 120 Wis. 2d 646, 650, 358 N.W.2d 300, 302 (Ct. App. 1984). The public's interest in fair trials and just judgments will not tolerate a defendant benefiting from defrauding the court. Thus, the common law establishes that a fraud does not bar a second trial. *See McFarland v. State,* 68 Wis. 400, 402, 32 N.W. 226, 227 (1887).[3]

---

[2]Reid argues that the trial court invaded the province of the jury when it made factual findings concerning the perjury. We disagree. The province of *this* jury was fact finding in regard to the sexual assault charge. The fact finding done by the court was necessary to decide the motion for mistrial and was not done in a perjury prosecution.

[3]Reid argues that *McFarland v. State,* 68 Wis. 400, 32 N.W. 226 (1887), does not apply because the case involved collusion.

Each double jeopardy case turns on its particular facts. *Illinois v. Somerville,* 410 U.S. 458, 464 (1973). The "manifest necessity" test cannot be limited to mechanical formulas or situations. *See State v. Mendoza,* 101 Wis. 2d 654, 661–62, 305 N.W.2d 166, 170 (Ct. App. 1981). We recognize that witnesses do not always honestly testify. Under the facts before this court, however, we believe that the trial court did not abuse its discretion in implementing the "manifest necessity" test. Any other interpretation of the "manifest necessity" test would rob the trial court of the power to protect the defendant's and the public's interest in a fair trial as the fraud continues before it.

Reid argues that the proper remedy is prosecution under the perjury statute instead of declaring a mistrial. However, a perjury prosecution would not have remedied the possibility that Reid would not receive a fair trial before an impartial jury. Therefore, it was not an abuse of discretion to grant a mistrial.

We hold that the trial court did not abuse its discretion when it declared a mistrial because of a "manifest necessity." Thus, double jeopardy did not bar the second trial and the order is affirmed.

*By the Court.*—Order affirmed.

---

We interpret *McFarland's* recitation of the common law as not limited to one type of fraud but as capable of including other types of fraud in addition to collusion.