STATE of Wisconsin, Plaintiff-Respondent,†

v.

Brian D. SEEFELDT, Defendant-Appellant.

Court of Appeals

*No. 01–1969–CR. Submitted on briefs March 21, 2002.—
Decided May 22, 2002.*

2002 WI App 149

(Also reported in 647 N.W.2d 894.)

† Petition to review granted 9-3-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Brown, Anderson and Snyder, JJ.

¶ 1. BROWN, J. The constitutional protection against double jeopardy includes a defendant's cherished right to have his or her trial completed by the jury that was sworn. A limited exception to this right is recognized only when the government can demonstrate a manifest necessity for seeking a mistrial. In this case, the trial court granted the State's request for a mistrial on the ground that defense counsel's reference to a witness's outstanding warrants violated a pretrial order prohibiting introduction of "other acts" evidence until the trial court ruled on its admissibility. We assume without deciding that counsel blatantly violated a pretrial order prohibiting any mention of other crimes or acts until the court had a chance to decide their admissibility. Be that as it may, a court may not declare a mistrial in a criminal case simply because its order was violated. The court must ask whether the violation caused the jury to hear something it might not otherwise have been entitled to hear. In this case, we decide,

414

as a matter of law, that the acts referred to by counsel would have been properly admitted even had the court been given the opportunity to decide the issue first. Thus, the jury was not tainted by the violation, there was no manifest necessity for the mistrial, double jeopardy attached and the subsequent retrial was improper. We reverse the judgment of conviction and the accompanying order denying postconviction relief.

## FACTS

¶ 2. On March 15, 1997, law enforcement officers stopped a car driven by Michelle Bart, in which Brian D. Seefeldt was a passenger. During the stop, Bart provided the officers with a false name and refused to turn the ignition off. An officer then ordered Bart to exit the vehicle and attempted to reach in to remove the keys. Bart put the car in gear and took off at a high rate of speed; a high speed chase ensued.

¶ 3. The chase ended after the vehicle spun into a snowbank in the median of the highway. A search of Seefeldt and the vehicle yielded, among other things, marijuana, cocaine, weapons and drug paraphernalia.

¶ 4. An information was filed on April 9, 1997, charging Seefeldt with possession of marijuana with intent to deliver as a party to a crime, possession of cocaine with intent to deliver as a party to a crime, possession of drug paraphernalia, and two counts of carrying a concealed weapon. The intent to deliver charges also included penalty enhancers for possessing within 1000 feet of a public school building.

¶ 5. Seefeldt's first jury trial commenced on March 22, 1999. During presentation of opening statements, the prosecutor described the State's outline of the case, including these remarks:

[Y]ou'll hear testimony that the driver and/or the passenger of the car put the car in gear and it sped away . . . while the officer had a gun pointed at the car and persons in the car and actually had his arm in the car.

. . . .

You will hear from Ms. Bart . . . . She is a person who you will hear about and obviously recognize, in terms of her dress, has been held accountable for her actions. She will tell you that she saw Mr. Seefeldt sell cocaine. She will tell you that she saw Mr. Seefeldt bring five pounds of marijuana to this community.

¶ 6. John Miller Carroll, Seefeldt's counsel at the first trial, also referred to the moments just prior to the flight with the following remarks:

Now, the evidence is also going to show that the second car was being driven by this Michelle, Brian's girlfriend. Now, at that point . . . the officers exit the car. Apparently they had their guns drawn on this vehicle. Michelle Bart had, at that time, I believe, 15 warrants for her arrest that were out there from around the state of Wisconsin, mostly from writing bad checks in places.

¶ 7. The prosecutor objected to the reference to Bart's fifteen warrants; his objection was sustained. The prosecutor then moved to strike the comment and asked to be heard outside the presence of the jury.

[PROSECUTOR]: Your Honor, the basis for my objection and motion for mistrial is the fact that prior to any information about other acts being presented to a jury either in argument form or statement form, which is tantamount to the argument today, you must, first of all, be advised and request permission and you must grant that permission.

416

And the fact of the matter is that of the warrants that were outstanding, because there were, I don't deny the truth of that, but they were ordinance violations, at least the greatest number of them, okay. So now we have other acts evidence submitted to this jury where there is no criminal conviction, where there was no request of the Court for permission to bring it to their attention.

Now I'm going to have to defend. I certainly understand that when she's asked the question when she testifies, have you been convicted of a crime, she would have to answer according to what the criminal record and history shows, and I have that for you to look at. But it does not include any convictions for the matters that he just brought up. It seems to me that that is unduly prejudicial and unfair, taking advantage of this Court, and I don't think it's appropriate.

I think the case should be [declared], at this point, a mistrial[,] . . . that costs should be assessed against Mr. Carroll and his client for the actions that were just taken.

THE COURT: Mr. Carroll.

MR. CARROLL: Judge, that's patently absurd. First of all, the burden is on the State to inform us of intent to use other acts evidence of the statute. He hasn't done that. He indicated in chambers he was going to try to do it. It's obviously relevant to this case because they are arguing there was a high-speed chase where Mr. Seefeldt was throwing drugs out of the car. It explains the motivation for the driver to leave, and I'm going to prove it.

It's not other act evidence if she can explain on the witness stand these were bad check warrants from municipalities. And then when she testifies to her prior record, they will find out about her six prior convictions . . . . It's not prejudicial in any way whatsoever

417

and it can be explained. It's relevant because it explains her reason . . . for leaving the scene at a hundred miles an hour in the vehicle, and there was also no motion *in limine* on this. It's . . . all over the police reports.

THE COURT: Mr. Carroll, you've tried enough of these cases to know that in an opening statement it is a neutral statement of facts, but what you indicated by your opening statement is not neutral. You don't know what other acts, whether it's even going to be an issue. In fact, you asked this morning in chambers about other acts, and I indicated to you, "I don't know what's going to happen. We will have to wait until the trial begins and people start to testify before we know."

. . . . We all know the standard procedure for other acts as to have you ever been convicted of a crime? If so, how many times? And that's it. That's the limitation of it. Now what you have done is you have opened a can of worms on the State's witness by saying these warrants were outstanding for her writing bad checks, and that's improper, and you know that.

The question is whether or not it so taints these proceedings at this point that the Court should grant the State's motion for a mistrial. I don't know of any way of curing this situation. I don't know of any curative instruction that the Court can give to tell them to disregard what's been said.

MR. CARROLL: Judge, with all due respect, municipal warrants people can understand, that it's clearly relevant in this case, and there is going to be a numerous amount of evidence that's going to come in regarding these warrants, and it's going to explain her motivation for leaving the scene which goes to his intent as to what these officers say[] they were observing. I do not believe this is prejudicial whatsoever. It's—clearly must be presented during the course of this trial in order to explain his intent as a passenger where he is being accused.

418

His rights are the ones that are supposed to be protected by a mistrial motion in this situation . . . . The State is going to admit that she was taken into custody on municipal warrants. This is not a basis for a mistrial, Your Honor.

[PROSECUTOR]: Wouldn't have to come up at all, Judge. The fact of the matter is what they are trying to do here is provoke a mistrial. I hesitate to ask for a mistrial when they are hoping the witness will change her mind about testifying.

He should be disqualified from this case for this kind of behavior . . . . What they really want to have happen is for there to be a mistrial so she changes her mind, that is Bart changes her mind about [testifying]. Seems to me this is a calculated scheme. Seems to me this man should be disqualified.

In addition to the motion for mistrial, I don't know how you can cure the fact of the matter those warrants for worthless checks and/or for ordinances. All of those, which is what all of those were in my reading of the warrant history that was provided to me, do not affect her credibility. What do they have to do with it? He is the one that—who put the car in gear and slammed on the accelerator, at least factually that's an argument that one person will say another thing . . . .

MR. CARROLL: Judge, he brought that evidence in about him touching the accelerator and there is nowhere in the report that it says that the officer observed him leaving. She also said that he put a gun to her head so that she did it. This is clearly relevant to show why she sped away because they are going to try to use this other evidence to say that that showed an intent to deliver something.

[PROSECUTOR]: Brought out before we even had this argument.

419

MR. CARROLL: He was the one that opened the door to it, Judge. Flight, escape, and concealment is clearly a relevant jury instruction here, and they are using it to show intent, so we're entitled to bring in a motivation for her for leaving the scene, and warrants provide it, and I intend to ask her about that on the record and there has been no motion *in limine* to prevent me from doing so.

[PROSECUTOR]: There is an evidentiary code that prevents him from doing so until he's appropriately asked you to do so, and he hasn't done it, and who knows what your decision is going to be about this. I mean you haven't decided yet. Maybe that would be the basis of your decision for the mistrial. The fact of the matter is I don't have to file a motion *in limine* to enforce the rules of evidence.

THE COURT: I'm going to grant your motion for mistrial.

[PROSECUTOR]: What about costs and/or disqualification?

THE COURT: Costs will be assessed against the defendant.

Mr. Carroll, you are removed from the case.

[PROSECUTOR]: So can we have . . . a new trial? There was a speedy trial demand. I would imagine in light of the—

THE COURT: He is out on bail—or he is out on his own recognizance. He has—I guess he has got cash bail that's here that will continue.

MR. CARROLL: Judge, can I just ask why I would be removed from the case?

THE COURT: You've tried a number of these cases, Mr. Carroll. We had a talk about other acts. You know the way and the manner in which that's to be presented

to the Court. You've tainted this jury. I can't think of any curative instruction to tell them to forget what they have heard. Isn't hardly adequate.

MR. CARROLL: Thank you.

¶ 8. On April 2, 1999, the trial court issued a written order declaring a mistrial, assessing costs against Seefeldt and Carroll and disqualifying Carroll from further representation. A second jury trial commenced on March 16, 2000, resulting in Seefeldt's conviction.

¶ 9. On July 2, 2001, a hearing was held on Seefeldt's postconviction motions to address, among other things, his claim of double jeopardy and the lack of necessity for a mistrial:

> [DEFENSE COUNSEL]: Even if Mr. Carroll was wrong and should not have made the comment, it's our position that the mistrial here was just too extreme a remedy, that there was easier ways to have resolved this to the extent—
>
> THE COURT: Even in light of the fact that he was warned prior to the commencement of the trial that he was not to go into that in his opening statement because we didn't know who was going to testify and what they were going to say, Mr. Lang?
>
> [DEFENSE COUNSEL]: The record, unfortunately, is a little ambiguous as to what was being referred to in that regard and to his other acts, it seems to me, violated the court order.
>
> THE COURT: It may be ambiguous to you but it was not ambiguous to the Prosecutor, to the Court, and to Mr. Carroll. And, in fact, Mr. Seefeldt was present in chambers when we had these discussions. That's my recollection.

[DEFENSE COUNSEL]: I guess Mr. Seefeldt does not recall being in chambers for that discussion . . . .

[PROSECUTOR]: This court was present in chambers with—I was there—discussions regarding other acts and criminal convictions were had. We were admonished not to go forward without prior judicial sanction. And within 15 minutes to 45 minutes, that's exactly what Attorney Carroll did. It was as much a shock to me as it was to you. My response was to seek a mistrial.

The trial court denied Seefeldt's postconviction motion and he appeals.

## DISCUSSION

¶ 10. Seefeldt contends his second trial violated his constitutional right against double jeopardy because the requisite manifest necessity was not established to warrant the granting of the prosecutor's motion for a mistrial.

■

¶ 11. Under the federal and state constitutions, a defendant may not be twice put in jeopardy for the same offense. U.S. CONST. amend. V; WIS. CONST. art. I, § 8. In construing Wisconsin's prohibition against double jeopardy, we are guided by the rulings of the United States Supreme Court. *State v. Barthels*, 174 Wis. 2d 173, 181, 495 N.W.2d 341 (1993). We recount the Court's assessment of the underlying purpose for the prohibition:

[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and

insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* (citation omitted).

¶ 12. Jeopardy attaches as soon as a defendant has been put at risk of penalty or harm, namely, when a witness is sworn in a trial to the court without a jury or when the selection of the jury has been completed and the jury sworn in a jury trial. *Id.* at 182. The Supreme Court has permitted limited exceptions to the general prohibition against double jeopardy when the trial is terminated before reaching a final resolution on the merits but only if the State can demonstrate a manifest necessity for asking for a mistrial. *Id.*

¶ 13. In deciding when circumstances warrant a declaration of mistrial rather than dismissal, we must consider whether the State has adequately met its burden of demonstrating the manifest necessity for the termination of the trial. *Id.* at 183.

> Courts of justice [may] discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

*Id.* (citation omitted). The Supreme Court has refined its definition of manifest necessity to hold that a high degree of necessity must be found before concluding that a mistrial is appropriate. *Id.*

¶ 14. Determining whether a manifest necessity exists is a matter of discretion for the trial court. *Id.* Whether circumstances warrant the granting of a mis-

trial can best be ascertained by the trial court because the trial court is in the best position to determine whether the prosecution seeks a mistrial to gain unfair advantages over the defendant. *Id.*

¶ 15. The standard by which we review the discretion exercised in granting a mistrial varies according to the facts of the particular case. *Id.* at 184. Where, as here, the prosecutor requests the mistrial, we give strict and searching scrutiny to the trial court's decision to grant a mistrial. *Id.* The Wisconsin Supreme Court has held that the trial court must consider the particular circumstances that led to the State's motion for a mistrial and contemplate alternatives to a mistrial before depriving the defendant of the right to have the original tribunal render a final verdict. *Id.* at 185.

¶ 16. In the instant dispute, we are confronted with a situation where the trial court, over Seefeldt's objections, granted the State's request for a mistrial because of comments made by defense counsel during opening arguments, a decision which must be reviewed with marked strictness. *See id.* at 184.

¶ 17. At the postconviction hearing, the parties discussed the reason behind the mistrial, which appears to be the prejudicial impact of Carroll's remarks in violation of a pretrial order. However, this pretrial order is neither transcribed nor otherwise memorialized anywhere in the record.[1] Consequently, we do not know exactly what the order prohibited. From our careful

---

[1] When the prosecution or defense consider off-the-record discussions about other acts evidence to be of import, then it is the attorneys' obligation to request that these matters be reported in order to preserve the record for appeal. *State v. Rosenfeld,* 93 Wis. 2d 325, 333, 286 N.W.2d 596 (1980).

review of the record, we are confident that the order at least prohibited any mention of "other acts" evidence without first obtaining a ruling on its admissibility outside the presence of the jury. The order may have also explicitly forbidden Carroll from mentioning the fifteen warrants subject to the same condition. In any event, the trial court was certain that the remarks violated the order and further determined that a curative instruction could not remove the prejudicial impact of the remarks. According to the trial court, the tainted jury provided the manifest necessity to justify a mistrial.

¶ 18. For purposes of discussion, we will assume that Carroll's remarks did indeed violate the pretrial order. The question we then need to answer is whether as a result of those remarks the State would have been denied a fair proceeding before an impartial jury. Stated differently, did Carroll's reference to the warrants cause the jury to hear information so inappropriate that the jury became incurably tainted? If the answer to this question is "yes," then the State would demonstrate the high degree of necessity required to overcome Seefeldt's constitutional right against double jeopardy. As we explain below, however, the answer to the question is "no" because the remarks simply exposed the jury to information that the defense was constitutionally entitled to present as evidence during trial. Under these circumstances, the remarks did not cause the jury to lose its impartiality and the State's claim that it was prejudiced must fail.

¶ 19. At the first trial, the prosecutor argued that the reference to warrants tainted the jury for two reasons: first, it was impermissible "other acts" evi-

dence under Wis. Stat. § 904.04(2) (1999–2000),[2] and second, it violated the rule in Wis. Stat. § 906.09 governing the admission of prior convictions. The trial court agreed with the prosecutor and granted the prosecutor's motion. The prosecutor and trial court are mistaken on both counts. We will address each issue in turn.

¶ 20. Character evidence precluded under the first sentence of Wis. Stat. § 904.04(2) is evidence that an accused committed some other act for the purpose of showing that the accused had a corresponding character trait and acted in conformity with that trait.[3] *State v. Sullivan*, 216 Wis. 2d 768, 782, 576 N.W.2d 30 (1998). Thus, the statute operates to "forbid[] a chain of inferences running from act to character to conduct in conformity with the character." *Id.*

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version.

[3] Wisconsin Stat. § 904.04(2) states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Although the first sentence precludes propensity evidence, the second sentence permits admission of "other acts" evidence if its relevance does not hinge on the accused's propensity to commit the act charged. *State v. Sullivan*, 216 Wis. 2d 768, 783, 576 N.W.2d 30 (1998). In a classic example of using "other acts" evidence to show intent or absence of accident, a hunter claims that he shot his companion by accident. Evidence that the hunter had fired at the companion on other occasions is admissible to disprove the claim of accidental shooting. *Id.* at 785.

¶ 21. We have previously explained, however, that not all references to prior bad acts constitute "other acts" evidence in the eyes of the law. *See State v. Bauer*, 2000 WI App 206, ¶ 7 n.2, 238 Wis. 2d 687, 617 N.W.2d 902; *see also State v. Johnson*, 184 Wis. 2d 324, 348–54, 516 N.W.2d 463 (Ct. App. 1994) (Anderson, P.J., concurring). In *Bauer*, the other act was the defendant's attempt to solicit murder while incarcerated. *Bauer*, 2000 WI App 206 at ¶ 7. We held that evidence of the solicitation was not prohibited "other acts" evidence but was admissible evidence showing consciousness of guilt. *Id.* We further suggested that when reference is made to a prior bad act, the threshold question for the trial court to consider is "what is the purpose of the [party's] intention to admit the evidence?" *Id.* at ¶ 7 n.2. If it is not to show a similarity between the other act and the alleged act, then perhaps the parties should entertain the question of whether it is "other acts" evidence at all. *Id.*

¶ 22. Carroll clearly articulated to the trial court that he sought to admit the warrants in order to bolster Seefeldt's defense theory that Bart was the party who made the decision to flee and not Seefeldt. The existence of the warrants explained why Bart would engage in a high speed chase to avoid being arrested. There was no suggestion that the flight in this instance conformed in any way to an earlier incident of flight and that therefore Bart had the propensity to flee. In fact, there was no conformity comparison at all. The warrants were referenced for the sole purpose of showing Bart's motive to flee, an essential aspect of Seefeldt's theory of defense. Therefore, contrary to the assertions of the prosecutor at the first trial, evidence of the warrants was relevant to a proposition of consequence entirely

unrelated to Bart's character and any inference that she acted in conformity therewith.

¶ 23. We are satisfied that the reference to the outstanding warrants is not classic "other acts" evidence invoking Wis. Stat. § 904.04(2) analysis. Rather, the existence of the warrants is "part of the panorama of evidence" that directly supports Seefeldt's defense and sits at the heart of his right to present exculpatory evidence. *See Johnson,* 184 Wis. 2d at 349, 354 (Anderson, P.J., concurring). Therefore, Carroll's remarks did not cause the jury to hear any information that would have rendered the proceedings unfair to the State.

¶ 24. The trial court also assumed that the remarks violated Wis. Stat. § 906.09 governing the admission of prior convictions for impeachment purposes. The court's assumption requires us to recap the purpose of § 906.09. The purpose of the statute is to establish a procedure to follow when a party seeks to admit prior conviction evidence for impeachment purposes. The statute reflects the long-standing view that "one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted." *Nicholas v. State,* 49 Wis. 2d 683, 688, 183 N.W.2d 11 (1971). In fact, when a party brings a witness's past criminal convictions into evidence for that purpose, it is entitled to a jury instruction which tells jurors that the evidence has been received "solely because it bears upon the credibility of the witness." Wis JI—Criminal 325.

¶ 25. Here, the trial court reasoned that Carroll's reference to Bart's outstanding warrants implicated Wis. Stat. § 906.09 and should not have been introduced to the jury without allowing the trial court to first determine the proper answer to two standard

inquiries: "Have you ever been convicted of a crime?" and if so, "How many times?" *See State v. Kuntz*, 160 Wis. 2d 722, 752, 467 N.W.2d 531 (1991).

¶ 26. We are at a loss to understand how Wis. Stat. § 906.09 jurisprudence factored into the analysis. Carroll's purpose in mentioning these warrants to the jury was not for the purpose of providing the groundwork for a Wis JI—Criminal 325 instruction. It was not mentioned for the purpose of asking the jury to think of Bart as an untruthful person because of her outstanding warrants. Rather, Carroll mentioned the warrants for the purpose of demonstrating why Bart, on her own initiative, may have fled the scene and why she may have been motivated to testify against Seefeldt. Seefeldt had a right to raise these issues as part of his right to put on a defense. We conclude that the rationale which referenced § 906.09 was simply misplaced.

¶ 27. In sum, we assume that Carroll violated the pretrial order when he referred to the outstanding warrants. If, in fact, Carroll violated a clear and unambiguous pretrial order less than forty-five minutes after it was announced by the court, we do not condone Carroll's action. He should be sanctioned. But, the violation of the order, by itself, does not constitute a manifest necessity to overcome Seefeldt's constitutional right to have his trial completed by the first tribunal. A sanction-based mistrial that raises double jeopardy concerns will be affirmed only if the circumstances would preclude a fair trial by an impartial tribunal.[4] Here, we

[4] For example, in *State v. Reid*, 166 Wis. 2d 139, 146–47, 479 N.W.2d 572 (Ct. App. 1991), we observed that a jury was tainted by its knowledge that a defense witness committed perjury. We

have found no basis for concluding that the State would have been denied a fair proceeding; the jury heard only information concerning evidence that Seefeldt would have been constitutionally entitled to present in his defense.

¶ 28. Seefeldt makes additional arguments about constitutional violations that occurred during this case; however, our decision on the double jeopardy issue is dispositive and we need not address the remaining issues.[5] *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

## CONCLUSION

¶ 29. Seefeldt's second trial violated his constitutional right against double jeopardy because the State did not demonstrate a manifest necessity for a mistrial at the first trial. We therefore reverse the judgment of conviction and order denying postconviction relief.

*By the Court.*—Judgment and order reversed.

¶ 30. SNYDER, J. (*dissenting*). The majority opinion points out that in construing Wisconsin's pro-

---

rejected sanctions such as recalling the witness and prosecuting for perjury because they would not have remedied the possibility that the defendant would not receive a fair trial before an impartial jury. *Id.* By contrast, in civil litigation the parties have no constitutional right to a trial by a particular jury, once empaneled. Therefore, in a civil case the trial court can grant a mistrial as a sanction for misconduct without deliberating over double jeopardy concerns.

[5] Seefeldt's successor trial counsel failed to file a motion to dismiss the second trial based upon double jeopardy principles; the State concedes, and we agree, that such failure was based upon an erroneous view of the law and Seefeldt was prejudiced by this failure. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

hibition against double jeopardy, we are guided by the rulings of the United States Supreme Court. *State v. Barthels*, 174 Wis. 2d 173, 181, 495 N.W.2d 341 (1993). The seminal United States Supreme Court double jeopardy case addressing improper opening statements by defense counsel is *Arizona v. Washington*, 434 U.S. 497 (1978). Because the trial court's grant of the prosecution's motion for mistrial, over Seefeldt's objection, is constitutionally firm under *Washington*, I respectfully dissent. I would affirm Seefeldt's conviction and the trial court's order denying double jeopardy relief.

¶ 31. In *Washington*, the trial judge granted the prosecutor's motion for a mistrial predicated on improper and prejudicial comment during defense counsel's opening statement to the jury. *Id.* at 510. A retrial of Washington was denied in response to his habeas corpus petition alleging double jeopardy protections. *Id.* at 498. The United States Supreme Court granted certiorari and reversed, holding that where a mistrial is granted because the defendant's attorney made improper and prejudicial remarks during his opening statement to the jury, a trial judge's mistrial determination is entitled to "special respect." *Id.* at 510.

¶ 32. Washington argued (as does Seefeldt) that the evidence referenced in his opening statement was proper and admissible as a matter of law, but the Supreme Court regarded the issue as foreclosed by Washington's failure to proffer sufficient support for his contention of admissibility and by the Arizona state court's interpretation of its own law. *Id.* at 510–11. After giving "special respect" to the trial court's determination, the Supreme Court addressed the double

jeopardy issue from the premise that defense counsel's comment was improper and may have affected the impartiality of the jury. *Id.*

¶ 33. The *Washington* Court recognized that the extent of possible jury bias cannot be measured, and acknowledged that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. *Id.* at 511. The Court then stated:

> In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the even-handed administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.

*Id.*

¶ 34. The Court found that the compelling reasons for allowing a trial judge broad discretion in determining "manifest necessity" in deadlocked jury cases also would apply to improper defense counsel opening statements:

> We are persuaded that, along the spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny, the difficulty which led to the mistrial in this case also falls in an area where the judge's determination is entitled to special respect.
>
> In this case the trial judge ordered a mistrial because the defendant's lawyer made improper and prejudicial remarks during his opening statement to the jury.

*Id.* at 510.

¶ 35 The *Washington* Court recognized that an improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached and that such statements create a risk that the entire jury panel may be tainted. *Id.* at 512. It related that while the trial judge may instruct the jury to disregard the improper comment or, in extreme cases, discipline counsel (as here, with the tacit approval of the majority opinion), or even remove offending counsel from the trial:[1]

> [t]hose actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if [the trial judge] were deterred from exercising that power by a concern that anytime a reviewing court disagreed with his [or her] assessment of the trial situation a retrial would automatically be barred.

*Id.* at 513.

¶ 36. The *Washington* case law applicable here is that a trial court's decision to declare a mistrial on its assessment of the prejudicial impact of the content of improper defense opening statements is entitled to great deference; a trial court must exercise sound discretion in declaring a mistrial and the trial court cannot act irrationally or irresponsibly. *Id.* at 514.

---

[1] The trial court removed Carroll as Seefeldt's counsel and the removal is raised in Seefeldt's second appellate issue. *Arizona v. Washington*, 434 U.S. 497, 513 (1978), recognizes the removal option as being within the exercise of the trial court's "special respect" discretion and, therefore, it would be part and parcel of Seefeldt's double jeopardy claim under the *Washington* analysis.

Therefore, granting the trial court great deference, we now look to this record to determine if there was an erroneous exercise of discretion.

¶ 37. The dilemma created by Carroll's opening statement to the jury is evident from the record. The prosecutor was not concerned about the jury knowing that Michelle Bart was the subject of outstanding warrants when she fled the police, telling the trial court that "the fact of the matter is that of the warrants that were outstanding, *because there were, I don't deny the truth of that,* but they were ordinance violations, at least the greatest number of them, okay." (Emphasis added.) Carroll knew that when Bart testified she would have to admit to six prior criminal convictions as mandated by WIS. STAT. § 906.09. Carroll informed the jury that Bart had "*15* warrants for her arrest that were out there from around the state of Wisconsin, *mostly from writing bad checks* in places." (Emphasis added.) The prosecution objected to that statement and immediately moved for a mistrial.

¶ 38. The prosecution's motion for a mistrial was premised upon Carroll placing the State in a position of having to convince the jury that Bart, while admitting that she had six prior criminal convictions pursuant to WIS. STAT. § 906.09, was not a candidate for an additional fifteen criminal convictions based upon the existing warrants. In context, the prosecutor told the trial court:

> Now I'm going to have to defend . . . when [Bart] testifies, have you been convicted of a crime, she would have to answer according to what the criminal record and history shows . . . . But it does not include any convictions for the [15] matters that [Carroll] just brought up.

¶ 39. Carroll conceded that a secondary purpose in telling the jury the number and reasons for the

434

existence of the warrants was to suggest to the jury that the warrants impugned Bart's credibility. Carroll argued that "[i]t's not other act evidence *if she can explain on the witness stand these were bad check warrants from municipalities*."[2] (Emphasis added.) In other words, Carroll's purpose was to place Bart in a position where she would have to testify extensively as to the extraneous background concerning each of the existing warrants, a purpose unnecessary to use of the outstanding warrants as defense evidence of motive to flee.

¶ 40. The trial court, after hearing extensive argument as to the impact of Carroll's jury statement to the jury, specifically found that Carroll's opening statement to the jury was improper: "Now [Mr. Carroll] what you have done is you have opened a can of worms on the State's witness[3] by saying these warrants were outstanding *for her writing bad checks, and that's improper*, and you know that." (Emphasis added.)

¶ 41. In addition to finding that Carroll's opening statement was improper, the trial court found that "[t]he question is whether or not [Carroll's opening statement] so taints these proceedings at this point that the Court should grant the State's motion for a mistrial.

---

[2] Contrary to the majority opinion's insistence that Bart's issuance of bad checks was not WIS. STAT. § 904.04(2) "other acts" evidence, apparently Carroll was convinced that the bad checks represented "other acts" evidence when he told the jury about them, and later when he argued the propriety of his opening statement to the trial court.

[3] The prosecutor had told the jury in opening statements:

> You will hear from Ms. Bart . . . . She is a person who you will hear about and obviously recognize, in terms of her dress, has been held accountable for her actions. She will tell you that she saw Mr. Seefeldt sell cocaine. She will tell you that she saw Mr. Seefeldt bring five pounds of marijuana to this community.

I don't know of any way of curing this situation. I don't know of any curative instruction that the Court can give to tell [the jury] to disregard what's been said." *Washington* speaks to this trial court finding as well:

> There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias. He [or she] has seen and heard the jurors during their *voir dire* examination. He [or she] is the judge most familiar with the evidence and the background of the case on trial. He [or she] has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he [or she] is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

*Washington*, 434 U.S. at 513–14 (citation omitted; footnote omitted).

¶ 42. The trial court's familiarity with pretrial orders, and the prior discussions and understandings as to the production and admissibility of evidence to the jury, are part of "the background of the case on trial."

¶ 43. The majority opinion reverses the judgment and order because of a failure to demonstrate a manifest necessity for a mistrial at the first trial. Majority at ¶ 29. In *Washington*, the trial court failed to make an explicit finding of "manifest necessity." The United States Supreme Court held that an explicit finding of "manifest necessity" was not necessary and that "[s]ince the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective." *Washington,* 434 U.S. at 516–17.

¶ 44. Here, as in *Washington*, the trial record provides sufficient justification for the trial court's

double jeopardy ruling. Because the ruling is constitutionally firm, I would affirm the judgment and order.