STATE of Wisconsin, Plaintiff-Respondent,

v.

James Edward KNIGHT, Defendant-Appellant-Petitioner.

Supreme Court

*No. 86–0968–CR. Argued January 6, 1988.—Decided April 14, 1988.*

(Also reported in 421 N.W.2d 847.)

 

For the defendant-appellant-petitioner there were briefs and oral argument by *Mark Lukoff,* first assistant state public defender, Milwaukee.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

WILLIAM A. BABLITCH, J. The defendant James Edward Knight (Knight) seeks review of a decision of the court of appeals which affirmed his convictions of being a party to the crimes of armed robbery, endangering safety by conduct regardless of life, and false imprisonment. Knight appeals all three convictions, arguing that the circuit court abused its discretion by failing to provide clear supplementary instructions to the jury during the course of the jury deliberations. We disagree.

Knight further maintains that the circuit court coerced the jury into reaching its ultimate verdicts by forcing the jurors to continue deliberations after they reported they were unable to reach agreement on one of the three counts and gave their results to the court.

We conclude that the circuit court in effect accepted the jury's verdicts and deadlock when the court received the verdicts and deadlock in the presence of Knight, the jury and counsel, and the results

were fully disclosed to the court and partially disclosed to counsel. Once accepted by the court, the verdicts and hung counts could not be returned to the jury for further deliberations. Thus, the verdicts on the counts of false imprisonment and endangering safety by conduct regardless of life, as well as the deadlock on the armed robbery count, must stand as the jury's final determination.

Because the results of the verdicts as originally accepted are not clear from the record, we remand to the circuit court for a finding on the contents of the verdicts and for entry of judgment accordingly. The judgment of conviction on the armed robbery count is reversed.

The pertinent facts for this appeal are as follows. On December 20, 1985, Knight and codefendant Riley were convicted by a jury of party to the crimes of false imprisonment, armed robbery and endangering safety by conduct regardless of life. Because the details of these offenses are not relevant to this appeal they are not included.

The trial commenced in the circuit court for Milwaukee county, Judge Ralph G. Gorenstein, on November 11, 1985, and continued into the afternoon of November 12, 1985. On November 13, 1985, counsel gave their closing arguments and the court instructed the jury. The jury retired to deliberate at 12:20 p.m., and continued deliberations until 8:00 p.m. that night.

Jury deliberations resumed the following day, November 14, 1985. At 12:01 p.m., the jury submitted a note to the court stating, "[w]e have reached verdicts on four of six charges. If we cannot arrive at a unanimous decision on the remaining charges do the four completed verdicts stand or are they disregarded?" In response, the court reinstructed the jury that

it was to consider the guilt and innocence of the defendants separately, and that the jury must make a finding of guilt or innocence for each count in the information. As the court stated, "I guess what I'm asking you to do is to continue to deliberate on the counts that you have not reached a verdict on."

The spokesperson for the jury then inquired, "[i]s it a mistrial if we don't reach a conclusion on the remaining two verdicts?" The court and counsel conferred and the court answered, "our answer is that each verdict is considered separately, and that's exactly what the instruction said." The jury was excused from the courtroom at 12:10 p.m. to continue deliberations.

At 3:20 p.m., the court received another note from the jury stating that the jury was unable to reach a unanimous decision on two charges. The court advised counsel that it was going to read the jury the Allen charge. The prosecution told the court that it would not request the instruction and would instead accept the verdicts as they were. Knight and Riley indicated they would object to the giving of the Allen instruction; however, Knight's counsel agreed to accept the jury's verdicts. The court responded "[o]kay. Bring them down. ... Then we'll see what they've got."

The jury was brought into the courtroom with the verdicts. A juror informed the court that the jury remained deadlocked on one count against each defendant, and therefore was unable to reach a verdict on these counts. Further, the juror told the court that the jury did not want any more time to deliberate. The court then addressed the jury, "[o]kay. Please listen while I read the verdicts to you." Upon examination of the jury results, however, the court requested a side bar conference with counsel. After this conference, the

court gave the Allen instruction, over Knight's objection, and excused the jury to continue deliberations.

The court then summarized the content of the sidebar proceeding on the record,

> "Frankly, the Court misguessed, if you will, as we probably all did, on which charge they were deadlocked on, and when the Court discovered that it was the armed robbery charge that they had not made a decision on I called counsel sidebar and I told counsel that that was the charge. I did not indicate what their verdicts were on the other charges."

The court further stated that the prosecutor "indicated that he was going to probably go ahead and retry the matter if that was the case."

At 5:52 p.m., the jury returned to the court room with six verdicts. The jury found both Knight and Riley guilty on all counts. The record reflects that the two armed robbery verdicts were dated November 14, 1985, while the other four verdicts were dated the previous day, November 13, 1985. Both Knight and Riley were sentenced to the Wisconsin state prisons for consecutive terms of two years, ten years and five years.

Knight appealed, and the court of appeals affirmed his convictions. Knight subsequently filed a petition to review with this court, seeking reversal of the court of appeals' decision.

I.

Knight first claims that a new trial should be granted on all counts because the court's supplementary instructions to the jury, given at 12:01 p.m., were not clear and concise. In particular, Knight challenges

the court's failure to adequately respond to the jury's request for clarification of Wisconsin Criminal Jury Instructions 125 and 494.

This alleged error occurred after the jury had been deliberating approximately 10–11 hours. The jury sent a note to the court inquiring whether a failure to reach a unanimous verdict on two of the six counts would invalidate the result reached on the other four counts. After conferring with counsel, the court responded to the inquiry by rereading instruction 494 to the jury. A juror then asked if a mistrial would result if the jurors were unable to reach agreement on the remaining counts. The court again conferred with counsel and responded that "each verdict is considered separately" and that the jury should not be concerned about the prospect of a mistrial but should instead "[d]o your job according to the instructions given to you. ..." The jury was then excused to continue deliberations.

Knight contends that the court's statements enhanced rather than eliminated the jury's confusion. We disagree. It is presumed that a jury follows a properly given admonitory instruction unless it is otherwise demonstrated. *State v. Leach*, 124 Wis. 2d 648, 370 N.W.2d 240 (1985); *State v. Pitsch*, 124 Wis. 2d 628, 645 n. 8, 369 N.W.2d 711 (1985). In the present case, there is no indication that the jury remained confused by the court's supplemental instructions. Rather, the record reflects that the court's instructions were understood and followed. The jury did not request further guidance from the court but instead deliberated for approximately three more hours and then returned to the courtroom with four verdicts and two hung counts. The very fact that the jury remained

deadlocked on two counts of the charge suggests that they understood that an inability to agree on some counts would not nullify their verdicts on the remaining counts.

## II.

Knight claims that the next error occurred approximately three hours later, when the court sent the jury back to deliberate further after the jury informed the court of its inability to agree on one of three counts. Knight argues that the court should have accepted the partial verdicts, and that its failure to do so requires that all three convictions be reversed.

We conclude that the court effectively accepted the jury's two verdicts and deadlock at that time and, therefore, that these results must stand as the jury's final determination. While it was error for the court to then send the jury back for further deliberations, this error does not necessitate reversal of all three jury verdicts.

The facts, as stated in Knight's brief, are these:

> "The jury sent a note to the judge on November 14, 1985, at 3:20 p.m. that they were unable to reach a unanimous verdict on one charge as to each defendant. The state indicated that it wanted to accept the verdicts the jury had reached. The court agreed to accept the partial verdicts of the jury.
>
> "After the jury was seated juror Willis advised the court that the jury was unable to reach a verdict on one count against each defendant. The jury advised the court that they were 'deadlocked' and that they did not wish any more time to deliberate. At that point, the court intended to

read the verdicts in open court. In the words of the court:

"'OK, please listen while I read the verdicts to you.' At that point, the court asked counsel for a side bar and gave the jury Wisconsin Jury Instruction—Criminal No. 520, over defendant's objection.

"After giving the instruction and excusing the jury to continue deliberations at 4:20 p.m., the court advised the parties and their counsel that it had 'mis-guessed' on which charges the jury was deadlocked. The court stated that the prosecutor indicated, in light of the fact that the jury was deadlocked on the armed robbery charges, that he was probably going to retry the matter."

We accept Knight's statement of facts for purposes of this appeal.

Generally, in a criminal case a verdict is considered accepted by the court when it is received and announced in open court. *Smith v. The State,* 51 Wis. 615, 619 (1881); 23A C.J.S. Sec. 1389 (1961); 4 Wharton's Criminal Procedure sec. 583 (C. Torcia 12 ed. 1976). Jurors are free to reconsider a verdict, even though they have reached agreement with regard to a particular charge or defendant, so long as the verdict has not been accepted by the court. *See* 3 Wright, Federal Practice and Procedure: Criminal 2d sec. 513 (1982). Similarly, once an otherwise non-defective verdict is delivered to the court for acceptance, the court cannot refuse to accept the verdict because it does not comport with the court's own opinion of the case. 23A C.J.S. Sec. 1389c; *compare State v. Kuenzli,* 208 Wis. 340, 343 (1932) (court may not refuse to accept a verdict of "not guilty") with *Westfall v. Kottke,* 110 Wis. 2d 86, 328 N.W.2d 481 (1983) (when

court receives a verdict which is patently inconsistent, jury should be reinstructed and directed to produce a verdict that conforms to the court's instructions).

In the present case the circuit court's actions in effect constituted an acceptance of the jury verdicts and deadlock. The jurors assembled in the courtroom and the court questioned them about the finality of their conclusions. The spokesperson for the jury stated that the jury did not want any more time to deliberate. The parties agreed that the results in their entirety should be received. The court, in apparent agreement, told the jury that the verdicts would be read. At no time did the court indicate to the jury that it was accepting only those verdicts that the jury had agreed upon. *See e.g. United States v. Dilapi,* 651 F.2d 140, 147 (2d Cir. 1981) (concluding that a jury should be instructed on the option of returning a partial verdict); 3 W. LaFave & J. Israel, Criminal Procedure sec. 23.7(g) (1984).

The court then received the verdicts and hung counts and examined them before the jury, counsel and defendants. The court immediately requested a sidebar conference and disclosed to counsel that the jury was deadlocked on the armed robbery count. While the court did not actually announce the verdicts, the jury's position was fully disclosed to the court and partially disclosed to counsel, as if announced. The jury had to have the impression that their deliberations were final. Thus, under these facts and circumstances, the court's actions were tantamount to an acceptance of the jury's verdicts and deadlock. *Accord State v. Avcollie,* 174 Conn. 100, 384 A.2d 315 (1977) (concluding that the court had impliedly accepted the jury's verdict where the process

leading to acceptance did not precisely conform to the usual procedure for acceptance of verdicts).

Once the jury results were viewed[1] and effectively accepted, the court should have entered judgment on the verdicts and declared a mistrial on the deadlocked count. Thus, it was error for the court to require further jury deliberations on the armed robbery count. *Accord Avcollie,* 384 A.2d at 319 n. 3 (noting that the power of the judge to return the jury for further consideration must be exercised before the verdict is accepted). To hold otherwise, could permit a court to invade the province of the jury by examining the jury's final results and, if unpalatable, to revoke judicial acceptance of the results by requiring further deliberations. Accordingly, we vacate the armed robbery verdicts reached after the court's acceptance of the jury results.

We reject Knight's contention that the jury's verdicts on the charges of false imprisonment and endangering safety by conduct regardless of life must

---

[1]The prosecution argues that "[t]he fact that the judge was aware of the specific question on which the jury disagreed is insignificant." In support of this contention, the prosecution relies on *Levandowski v. Studey,* 249 Wis. 421, 25 N.W.2d 59 (1946), in which the court examined a special verdict and subsequently sent it back to the jury for further deliberations. However, *Levandowski* is distinguishable from the instant case in that it involved a special verdict and the verdict was defective. A juror dissenting on one of the questions of the special verdict had failed to sign the verdict form before it was returned to the court. *Id.* at 426–27. Thus, the resubmission of the verdict to the jury was for the purpose of error correction. Under such circumstances, it is not improper for the court to view the verdict and then return the verdict to the jury for correction.

also be vacated. Because we conclude above that the court had effectively accepted the two verdicts, in addition to the jury's deadlock, these verdicts must stand.

However, we note that the record does not clearly indicate whether the original verdicts on these counts were guilty verdicts. The record suggests that the verdicts on the false imprisonment and endangering safety counts were not modified by the jury because these verdicts were dated a day earlier than the verdicts on the armed robbery charges.[2] If the verdicts contained in the record are the verdicts accepted by the circuit court, the convictions on the false imprisonment and endangering safety charges must be affirmed. To eliminate any uncertainty we remand to the Milwaukee county circuit court for an evidentiary hearing and a finding on whether the verdicts dated November 13, 1985, in the record are the verdicts originally accepted by the circuit court, and if so, for entry of judgment on those verdicts.

### III.

Finally, Knight argues that the circuit court coerced the verdicts by instructing the jury on the Allen charge. Additionally, he asserts that the court erred in refusing to elaborate on the reasonable doubt instruction. Because both of these claimed errors arose after the circuit court had accepted the verdicts

---

[2]Specifically, the verdicts on the charges of false imprisonment and endangering safety by conduct regardless of life were signed and dated November 13, 1985, whereas the verdicts on the armed robbery charges were signed and dated November 14, 1985, the date on which the court accepted the jury results and sent the jury back for further deliberations.

and the deadlock, rendering the jury decision final, we do not consider these issues.

*By the Court.*—The decision of the court of appeals is reversed and remanded for further proceedings consistent with this opinion.