STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony ALVARADO, Defendant-Appellant.

Court of Appeals

*No. 2016AP142–CR. Submitted on briefs October 26, 2016. —Decided July 26, 2017.*

2017 WI App 53

711

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John A. Cabranes* of *Cabranes Law Offices, LLC*, of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Sarah L. Burgundy*, assistant attorney general.

Before Neubauer, C.J., Gundrum and Hagedorn, JJ.

¶ 1. HAGEDORN, J. Anthony Alvarado was charged with second-degree sexual assault. The case

went to trial, and the jury was instructed to consider both second-degree sexual assault and the lesser included offense of third-degree sexual assault. After several hours of deliberation and multiple notes to the court, the jury sent a final note stating that all jurors "agree on not guilty for the second degree," but "are hung on the third degree." The court concluded the jury was deadlocked and ordered a mistrial.

¶ 2.   The State then sought to retry Alvarado, and he moved to dismiss the second-degree charge based on the double jeopardy provisions of the United States and Wisconsin constitutions. The circuit court denied his motion, and he sought leave to appeal the order. We grant Alvarado's petition for leave to appeal and conclude that retrial on the second-degree sexual assault charge does not offend double jeopardy.[1]

¶ 3.   Alvarado does not argue that the circuit court erroneously exercised its discretion in ordering a mistrial or that the court should have instructed the jury on a partial verdict. Rather, Alvarado insists that the jurors' professed agreement on the second-degree sexual assault charge constituted a final verdict. We hold that it did not. Because the jury here was free to reconsider its stance on the second-degree sexual assault charge, the note was not a verdict of acquittal, and retrying Alvarado on the second-degree charge does not violate double jeopardy.

## BACKGROUND

¶ 4.   The details of the alleged sexual assault are not relevant to this appeal. The jury deliberations and communications with the court are. The jury trial

---

[1] We grant Alvarado's petition for leave to appeal in accordance with *State v. Jenich*, 94 Wis. 2d 74, 288 N.W.2d 114 (1980) (opinion on reconsideration).

lasted two days, and only two witnesses testified: Alvarado and the alleged victim. After the close of evidence, the circuit court instructed the jury to consider second-degree sexual assault as well as the lesser included offense of third-degree sexual assault.

¶ 5. On the final day of trial, the jury began its deliberations at 11:10 a.m. Nearly three hours later, at 2:00 p.m., the jury sent a note to the judge indicating they were unable to reach a verdict. The court then called the jury back to the courtroom and read an instruction charging the jury to make an honest effort to resolve the issues and continue deliberations (WIS JI—CRIMINAL 520).[2] Deliberations continued for just under another hour until, at 2:55 p.m., the jury sent another note to the judge explaining that "[w]e are still

---

[2] WISCONSIN JI—CRIMINAL 520 is a modified version of the so-called "*Allen* charge," which is derived from *Allen v. United States*, 164 U.S. 492, 501 (1896). *Kelley v. State*, 51 Wis. 2d 641, 645, 187 N.W.2d 810 (1971). It provides the following:

> You jurors are as competent to decide the disputed issues of fact in this case as the next jury that may be called to determine such issues.

> You are not going to be made to agree, nor are you going to be kept out until you do agree. It is your duty to make an honest and sincere attempt to arrive at a verdict. Jurors should not be obstinate; they should be open-minded; they should listen to the arguments of others, and talk matters over freely and fairly, and make an honest effort to come to a conclusion on all of the issues presented to them.

> You will please retire again to the jury room.

WIS JI—CRIMINAL 520. The instruction approved of in *Allen* was similar, but also included the admonition that jurors in the minority should—in light of the majority's disagreement— consider whether his or her view was incorrect. *Kelley*, 51 Wis. 2d at 645. The Wisconsin version omits this "potentially coercive" language. *Id.*

unable to come to a unanimous decision." The court instructed the bailiff to tell the jury to continue to work for another half hour. Less than one-half hour later at 3:07 p.m., the court received yet another message from the jury. It read: "[I]f we find the defendant not guilty on second degree, do we have to be unanimous on third degree?" The court called the jury back into the courtroom a second time and read Wɪs JI—Cʀɪᴍɪɴᴀʟ 515, explaining that any verdict must be unanimous.[3] Then the jury was again instructed to continue deliberations.

¶ 6. At 3:35 p.m.—almost four and one-half hours after deliberations began—the jury sent a final note to the judge. The jury remained in the jury room, and the court read the note into the record. It read: "[W]e still cannot come to a unanimous decision. We all agree on not guilty for the second degree, but we are hung on the third degree." Upon this latest expression of disagreement, the court explained it was going to declare a mistrial:

> At this point, I have read them the additional instruction 520 at two o'clock. It's now quarter to four. They've been back in the courtroom. I've re-instructed them about the unanimous verdict that must be reached in this matter.
>
> The Court, quite frankly, does not believe there is any efficacy to keeping them out any longer and believes that a mistrial should be called.

The court further expressed its opinion that allowing a partial verdict on the second-degree charge would be

---

[3] The instruction provides in relevant part: "This is a criminal, not a civil, case; therefore, before the jury may return a verdict which may legally be received, the verdict must be reached unanimously." Wɪs JI—Cʀɪᴍɪɴᴀʟ 515.

"inappropriate," and "[i]t's going to be a mistrial on the entire case."[4] Based on the deadlock, the court called the jury into the courtroom, declared a mistrial, and dismissed the jurors.

¶ 7. The State sought to retry the case on the same charges. In response, Alvarado filed a motion to dismiss the second-degree charge.[5] He maintained that the jury's note was a verdict of acquittal, and principles of double jeopardy barred the State from trying him again on the second-degree charge. After a hearing, the circuit court denied Alvarado's motion and scheduled a trial. Alvarado filed a petition for leave to appeal to this court, which we now grant.[6]

## DISCUSSION

■■■

¶ 8.   The Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Wisconsin counterpart—article I, section 8—is identical in scope and purpose. *State v. Henning*, 2004 WI 89, ¶ 16 n.8, 273 Wis. 2d 352, 363, 681 N.W.2d 871. Accordingly, "we are guided by the rulings

---

[4] Although Alvarado's counsel did not object to the circuit court's decision to grant a mistrial, the State agrees that we should address Alvarado's double jeopardy argument.

[5] Alvarado also moved to "lift the gag order placed upon the jury" and "unseal the jury notes contained in the court file." Those requests are not at issue here.

[6] Alvarado petitioned this court for leave to appeal the circuit court's nonfinal order denying his motion to dismiss, and we ordered briefing. Pursuant to the guidelines established by our supreme court, we address the question of leave to appeal upon consideration of the briefs. *See Jenich*, 94 Wis. 2d at 97. We grant Alvarado's petition for leave to appeal and reject his arguments on the merits.

of the U.S. Supreme Court." *State v. Seefeldt*, 2003 WI 47, ¶ 15 n.4, 261 Wis. 2d 383, 661 N.W.2d 822. Whether retrial violates double jeopardy is a question of law we review de novo. *State v. Berry*, 2016 WI App 40, ¶ 9, 369 Wis. 2d 211, 879 N.W.2d 802.

¶ 9.   Among its proscriptions, the Double Jeopardy Clause "unequivocally prohibits a second trial following an acquittal." *Arizona v. Washington*, 434 U.S. 497, 503 (1978); *see also Henning*, 273 Wis. 2d 352, ¶ 16. This prohibition rests on the premise that the State is not allowed "to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Blueford v. Arkansas*, 566 U.S. 599, 605 (2012) (citation omitted). "While form is not to be exalted over substance in determining the double jeopardy consequences of a ruling terminating a prosecution, neither is it appropriate entirely to ignore the form" of an alleged acquittal. *See Sanabria v. United States*, 437 U.S. 54, 66 (1978) (citation omitted). The question is "whether the ruling . . . whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977); *see also State v. Turley*, 128 Wis. 2d 39, 49, 381 N.W.2d 309 (1986) (acquittals "resolve factual elements of the offense").

¶ 10.   Alvarado seeks to preclude retrial on the second-degree sexual assault charge because, in his view, the jury's note constitutes an acquittal. He does not challenge the court's order for mistrial or make an

argument that a partial verdict should have been considered.[7] Rather, he argues that the jury note represented a resolution of some or all of the factual elements of second-degree sexual assault, and insists

---

[7] The Double Jeopardy Clause also protects "the defendant's 'valued right to have his trial completed by a particular tribunal.' " *Arizona v. Washington*, 434 U.S. 497, 503 (1978) (citation omitted); *see also State v. Seefeldt*, 2003 WI 47, ¶ 16, 261 Wis. 2d 383, 661 N.W.2d 822. Where the defendant objects to the decision to declare a mistrial, retrial is only permitted when there was a manifest necessity justifying the mistrial. *Seefeldt*, 261 Wis. 2d 383, ¶ 19. A deadlocked jury is a "classic basis" for establishing a manifest necessity for a mistrial. *Arizona*, 434 U.S. at 509.

Some courts conclude that a jury is not genuinely deadlocked if it expresses agreement on the greater charge but cannot agree on a lesser included offense. Thus, there is no manifest necessity for a mistrial. These decisions counsel that the proper course of action may be for the trial court to enter a partial verdict, assuming the jurisdiction allows for it. Accordingly, these jurisdictions conclude that the trial court erroneously exercises its discretion if it fails to consider the alternative of allowing a partial verdict. *See, e.g., State v. Fennell*, 66 A.3d 630, 646 (Md. 2013) (holding that under the circumstances, the trial court did not exercise "sound discretion" because it failed to consider allowing a partial verdict in lieu of declaring a mistrial); *see also Whiteaker v. State*, 808 P.2d 270, 274 (Alaska Ct. App. 1991) (holding that no manifest necessity exists where the jury is unanimous against guilt on a greater offense but deadlocked on a lesser included, and the trial court should allow a partial verdict in such cases); *Stone v. Superior Court*, 646 P.2d 809, 820, (Cal. 1982) (holding that a "trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense" before granting a mistrial); *State v. Tate*, 773 A.2d 308, 324 (Conn. 2001) (holding there was no manifest necessity to declare mistrial because the trial court failed to inquire whether jurors had reached a partial verdict); *State v. Pugliese*, 422 A.2d 1319, 1320–21 (N.H. 1980) (per curiam) (holding there was no manifest necessity for mistrial where the

that it "could not have been clearer" from the note "[t]hat the jury resolved the Second Degree Sexual Assault charge." His argument hinges on the conclusion that the note "did not express any uncertainty as to [the jury's] decision." While Alvarado admits the lack of any formal judgment or acceptance of a verdict, he asserts that the note was a verdict in substance, even if not in form. We disagree.

¶ 11. The United States Supreme Court recently addressed a similar issue in *Blueford*. Blueford was charged with capital murder. *Blueford*, 566 U.S. at 601. The case went to trial, and the jury was instructed to consider capital murder and the three lesser included offenses of first-degree murder, manslaughter, and negligent homicide. *Id.* A "few hours" after beginning deliberations, the jury inquired "what happens if we cannot agree on a charge at all." *Id.* at 603. The trial court gave an *Allen*[8] charge, and the jury deliberated for one-half hour longer, but still reported that it could "not agree on any one charge in this case." *Blueford*, 566 U.S. at 603. Upon summoning the jury, the court was informed that the jury was " 'hopelessly' deadlocked." *Id.* The court asked the foreperson to disclose the votes, and the foreperson revealed that the jury was "unanimous against" the capital and first-degree murder charges but was deadlocked on the manslaughter charge. *Id.* at 603–04. The court again

trial court granted mistrial "without first asking the jury if they had reached a verdict on the greater offense").

Alvarado does not argue that the circuit court misused its discretion or should have considered accepting a partial verdict. Nor does he take issue with the circuit court's conclusion that the jury was deadlocked and a mistrial was warranted under the circumstances.

[8] *Allen*, 164 U.S. 492; *see also supra* note 2.

gave an *Allen* charge and sent the jury back to deliberate further. *Blueford*, 566 U.S. at 604. Thirty minutes later, the foreperson stated that the jury "had not reached a verdict"—though without disclosing whether the votes on the charge of first-degree murder remained the same. *Id.* Upon hearing this, the court declared a mistrial, and the State sought to retry Blueford. *Id.*

¶ 12. Blueford argued—as Alvarado does here—that "acquittal is a matter of substance, not form," and "the foreperson's announcement of the jury's unanimous votes on capital and first-degree murder represented . . . a resolution of some or all of the elements of those offenses in Blueford's favor." *Id.* at 605–06. The Supreme Court rejected this argument and concluded that the foreperson's statement was not a verdict. *Id.* The court observed that during the deliberations after the foreperson's announcement, the jury could have easily changed its mind. The court's reasoning is worth quoting at length:

> [E]ven if we assume that the instructions required a unanimous vote before the jury could consider a lesser offense—as the State assumes for purposes of this case—nothing in the instructions prohibited the jury from reconsidering such a vote. The instructions said simply, "If you have a reasonable doubt of the defendant's guilt on the charge of [the greater offense], you will [then] consider the charge of [the lesser offense]." The jurors were never told that once they had a reasonable doubt, they could not rethink the issue. The jury was free to reconsider a greater offense, even after considering a lesser one.
>
> A simple example illustrates the point. A jury enters the jury room, having just been given these instructions. The foreperson decides that it would make

sense to determine the extent of the jurors' agreement before discussions begin. Accordingly, she conducts a vote on capital murder, and everyone votes against guilt. She does the same for first-degree murder, and again, everyone votes against guilt. She then calls for a vote on manslaughter, and there is disagreement. Only then do the jurors engage in a discussion about the circumstances of the crime. While considering the arguments of the other jurors on how the death was caused, one of the jurors starts rethinking his own stance on a greater offense. After reflecting on the evidence, he comes to believe that the defendant did knowingly cause the death—satisfying the definition of first-degree murder. At that point, nothing in the instructions prohibits the jury from doing what juries often do: revisit a prior vote. "The very object of the jury system," after all, "is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." A single juror's change of mind is all it takes to require the jury to reconsider a greater offense.

*Id.* at 607–08 (citations omitted).

¶ 13. Therefore, notwithstanding its earlier votes, Blueford's jury could have revisited its conclusion. And thus, the foreperson's report—although expressing an apparently definite opinion—lacked the finality necessary to amount to an acquittal on those offenses, quite apart from any requirement that a formal verdict be returned or judgment entered. *Id.* It bears emphasis that the majority did not rest its holding on whether the jury actually reconsidered; it was unknown whether the jury had reconsidered its decision to acquit on the capital and first-degree murder charges.[9] *Id.* at 606–07. Rather, the ability to

---

[9] Justice Sotomayor's dissent confirmed that—under the majority's view—whether the jury actually revisited its decision was not the operative question. *Blueford v. Arkansas*, 566

721

"revisit a prior vote" deprived the foreperson's statement of the requisite finality. *Id.* at 608.

¶ 14. *Blueford* is not on all fours with this case, but its principles are. Alvarado points out, correctly, that the jury in *Blueford* was sent back for additional deliberation after it gave its report to the court. But *Blueford* still stands for the proposition that a jury's expression of agreement at a certain point in time is not an acquittal if the jury was free to reconsider its decision.

¶ 15. This is significant because Alvardo's jury never expressed its opinion in open court, nor did the court accept the verdict. It is blackletter law that "[v]otes taken in the jury room prior to being returned in open court are merely preliminary and are not binding on the jury, since any member is entitled to change his or her mind up until the time of the trial court's acceptance of the verdict." 75B Am. Jur. 2d *Trial* § 1509 (2007); *see also United States v. Chinchic*, 655 F.2d 547, 549–50 (4th Cir. 1981) (concluding that votes taken in the jury room are not final and cannot be an acquittal for double jeopardy purposes). Tentative tallies in the jury room, then, are straw polls, not final votes. *See Elery v. Commonwealth*, 368 S.W.3d 78, 90–91 (Ky. 2012) (characterizing a jury's tentative vote in the jury room as a "straw vote"). The Wisconsin Supreme Court has similarly stated, "Jurors are free to reconsider a verdict, even though they have reached agreement with regard to a particular charge or defendant, so long as the verdict has not been accepted by the court." *State v. Knight*, 143 Wis. 2d 408, 416, 421 N.W.2d 847 (1988).

---

U.S. 599, 615 (2012) (Sotomayor, J., dissenting). She explained that "the majority's view" was that "the jury might have revisited its decisions on the murder counts." *Id.*

¶ 16. Although not an inflexible, formalistic standard, a verdict is generally considered accepted when it is received and announced in open court—in part so that the jury may be polled if requested.[10] *Id.*; *see also* 75B AM. JUR. 2D *Trial* § 1533 ("Until the trial court accepts a verdict, jurors may change their vote and render a different verdict."). The opportunity to poll the jury is critical and enables each party to ascertain the jury's present state of mind to make sure that each juror assents to the verdict arrived at in the jury room and to make sure each juror *still* assents.[11]

---

[10] The requirement of acceptance does not create a fixed procedure essential to the finality of a verdict. 75B AM. JUR. 2D *Trial* § 1521 (2007). Indeed, *Knight* itself—while recognizing that the jury is free to change its mind at any time prior to acceptance of the verdict—held that a "circuit court's actions in effect constituted an acceptance of the jury verdicts" even though the circuit court subsequently sent the jury back to continue deliberating. *State v. Knight*, 143 Wis. 2d 408, 417, 421 N.W.2d 847 (1988). Additionally, a circuit court may not refuse to accept an otherwise nondefective verdict merely because it disagrees with the outcome. *Id.* However, Alvarado makes no argument that the circuit court effectively accepted the note as a verdict or that it should have; he merely argues that the note was de facto a final verdict.

[11] Polling is an important "common law" safeguard of the integrity of the verdict. *State v. Coulthard*, 171 Wis. 2d 573, 580–81, 492 N.W.2d 329 (Ct. App. 1992) (explaining the purpose of the poll is "to determine 'before it is too late, whether the jury's verdict reflects the conscience of each of the jurors' " (quoting ABA Standards for Criminal Justice ch. 15–4.5 (1980), now ch. 15–5.6)). Accordingly, both parties may request a jury poll. *See* ABA Standards for Criminal Justice 15–5.6 (3d ed. 1996) (explaining that in criminal cases "the jury should be polled at the request of any party or upon the court's own motion"); *Coulthard*, 171 Wis. 2d at 581 (citing Standard 15–5.6 with approval); *see also* 75B AM. JUR. 2D *Trial* § 1524

*See State v. Wojtalewicz*, 127 Wis. 2d 344, 348, 379 N.W.2d 338 (Ct. App. 1985) (explaining that the purpose of polling is to ensure each juror's vote is reflective of his or her conscience, not coercion, and to allow jurors the right to change their mind following the vote in the jury room).

¶ 17.  Alvarado makes no argument that the circuit court accepted the note as a partial verdict, and the court expressly disclaimed that it was doing so. Thus, because the verdict was not announced in open court and subject to polling, and was not accepted by the court, jurors remained free to change their minds. The State also observes that any juror could have changed his or her mind on the preliminary vote "in the time it took for the circuit court to receive the note, read it to the parties, decide how to address it, and call the jury back into the courtroom." It is hard to imagine how the note could be a final resolution of anything if any single juror could have changed his or her mind or repudiated it in open court as a product of social pressure. *See United States v. Love*, 597 F.2d 81, 84 (6th Cir. 1979) (explaining that, for double jeopardy purposes, the ability of a juror to dissent from the verdict when polled "compels the conclusion that a verdict is not final when announced").

¶ 18.  Furthermore, we do not even know whether the note represented a firm conclusion, a tentative compromise, or "merely a report on the

(2007) ("It is well established that the right to poll a jury exists, and extends to both parties."); 21A Am. Jur. 2d *Criminal Law* § 1180 (2007) (explaining that in criminal cases the trial judge "must conduct a jury poll at the request of either party"). Although some jurisdictions codify the procedure for jury polling and who may request a poll, *see, e.g.,* Fed. R. Crim. P. 31(d); Tex. Crim. Proc. Code art. 37.05, the Wisconsin Rules of Criminal Procedure do not.

current stage of deliberations."[12] *See Gusler v. Wilkinson*, 18 P.3d 702, 705 (Ariz. 2001).[13] The note gave no indication that it was intended as a final verdict. *See Caldwell v. State*, 884 A.2d 199, 213 (Md. Ct. Spec. App. 2005) (explaining that to satisfy the requirement that a jury verdict be unanimous, a verdict "must be *intended* to be a final decision, not subject to change or further reconsideration in the deliberation process" (emphasis added)). It merely explained the nature of the deadlock. It was a snapshot, an update, an interim report. At most, the note represents what the jury thought at the moment it was written, and critically, it did not prevent a juror from rethinking his or her position.

## CONCLUSION

¶ 19.    Simply put, the jury's note was not, in form or substance, a resolution of some or all of the factual

---

[12] Alvarado does not argue that the circuit court would have violated double jeopardy by sending the jury back to deliberate. *Blueford* is again instructive. The Supreme Court rejected Blueford's argument that the trial court was constitutionally bound to take " 'some action,' whether through new partial verdict forms or other means, to allow the jury to give effect" to the foreperson's statement. *Blueford*, 566 U.S. at 609. The court concluded that "[w]hen the foreperson disclosed the jury's votes on capital and first-degree murder, the trial court did not abuse its discretion by refusing to add another option—that of acquitting on some offenses but not others." *Id.* at 610.

[13] In *Gusler*, the defendant was charged with manslaughter, and the jury was instructed to also consider the lesser included offense of negligent homicide. *Gusler v. Wilkinson*, 18 P.3d 702, 703 (Ariz. 2001). During the course of deliberations, the jury sent a note to the court which read "We are deadlocked 7–5-Count 1 Talked about crucial issue for 2 hours-no movement Not guilty on manslaughter Deadlocked on negligent homicide-What do we do?" *Id.* As we do here, the Supreme Court of Arizona concluded that the note was not a verdict. *Id.* at 705.

elements of second-degree sexual assault. Because the jury was free to reconsider its currently expressed view on the second-degree sexual assault charge, the jury's note was not a verdict of acquittal. Therefore, retrying Alvarado on the second-degree sexual assault charge does not violate double jeopardy.

*By the Court.*—Order affirmed.